OPINION
UPON A REHEARING EN BANC
BUMGARDNER, Judge.
A jury convicted Benjamin Wayne McCracken of possession of marijuana and two counts of assault and battery of a law *258 enforcement officer. He contends the trial court erroneously admitted evidence obtained when a deputy sheriff illegally entered a home, frisked the defendant, and found marijuana in his pocket. He maintains he lawfully used reasonable force to resist his arrest because it was unlawful.
A panel of this court held that the trial court erred in admitting unlawfully seized marijuana and reversed the conviction of possession of marijuana. The panel held the defendant was not entitled to resist his arrest and affirmed the two convictions for assault and battery of a law enforcement officer. We granted a petition for rehearing en banc and stayed the mandate of the panel decision. Upon rehearing en banc, we affirm the trial court.
On appeal of the denial of a motion to suppress, we view the evidence in the light most favorable to the Commonwealth. Commonwealth v. Grimstead, 12 Va.App. 1066, 1067, 407 S.E.2d 47, 48 (1991). “[W]e are bound by the trial court’s findings of historical fact unless ‘plainly wrong’ or without evidence to support them,” McGee v. Commonwealth, 25 Va.App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc), but we review de novo the trial court’s application of legal standards such as reasonable suspicion to the particular facts of the case. See Ornelas v. United States, 517 U.S. 690, 699, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996).
The defendant and Teresa Fields had lived together for almost three years in a house owned by Fields. During an argument, Fields called the 911 emergency dispatcher to have the defendant removed from her residence. When Deputies Dollar and Sexton responded to the “domestic disturbance” the couple were still arguing, but the situation had not escalated to violence. The defendant agreed to move out of Fields’ house, and the deputies remained for forty-five minutes and helped him remove his belongings. The defendant went to stay with his mother.
After the defendant arrived there, he telephoned Fields, and the two renewed their argument. When that call ended, the defendant’s mother telephoned Fields and warned her that the *259 defendant was going to her house. Fields called the 911 emergency dispatcher a second time and reported the defendant was returning. The dispatcher instructed her to lock her doors and dispatched Deputies Dollar and Sexton to the “domestic call.”
When Deputy Dollar arrived at Fields’ house, the back door was locked, neighbors were in the front yard screaming, and the deputy heard Fields and the defendant arguing inside the house. The front door was partially open, but the screen door was closed. The deputy drew his weapon, pushed open the screen door, and entered.
The defendant and Fields were standing four to six feet apart. The deputy saw nothing in their hands. He holstered his weapon, but as he looked over the defendant, he noticed a bulge in his right front pants pocket. He asked the defendant to place his hands on the wall so he could make sure the defendant did not have any weapons. The defendant did not comply and kept moving around the room despite repeated requests to put his hands on the wall. Finally, the defendant stopped and put his hands on the back of a love seat.
While the defendant leaned against the love seat, the deputy patted the defendant’s front right pocket and felt a hard, rigid object in it. The deputy reached into the pocket for the hard object, but first uncovered a plastic baggie containing plant matter, which had been on top of the hard object. The deputy believed the bag contained marijuana. He told the defendant he was under arrest for possession of it and instructed the defendant to put his hands behind his back. Again the defendant disregarded instructions. He “kept easing away,” and then stated he wanted his Skoal and his gun. The defendant started toward the kitchen at a fast pace.
Deputy Dollar told the defendant to stop and grabbed hold of him. The defendant resisted; the two began to scuffle, and then to fight. During the altercation the defendant kicked the deputy, struck him in the face, and began choking him with a headlock hold. At that point, Deputy Sexton arrived. While he tried to break the defendant’s hold on Dollar, the defendant *260 elbowed Sexton in the ribs. Eventually, the two deputies subdued the defendant and handcuffed him.[1]
Before opening the screen door, the deputy had probable cause to believe the defendant was trespassing, Code § 18.2-119.[2] The deputies responded to the initial domestic disturbance call because Teresa Fields wanted the defendant removed from her house. Fields was the owner of the residence, and she could properly revoke the defendant’s permission to be on the property. He left voluntarily the first time, but ninety minutes later he returned to her house causing Fields to place a second call to the 911 emergency dispatcher. When the deputy responded, neighbors were screaming, and the deputy heard the defendant inside arguing with Fields. “In determining whether probable cause exists courts will test what the totality of the circumstances meant to police officers trained in analyzing the observed conduct for purposes of crime control.” Hollis v. Commonwealth, 216 Va. 874, 877, 223 S.E.2d 887, 889 (1976).
As a trespasser, defendant had no justifiable expectation of privacy in Fields’ home and therefore no standing to contest the entry of the house. See Woodson v. Commonwealth, 25 Va.App. 621, 626, 491 S.E.2d 743, 745 (1997) (“We hold that appellant was not lawfully on the premises and that, as a trespasser, he lacks the privacy interest necessary to claim a Fourth Amendment violation.”).[3]
*261 The deputy entered armed with probable cause to believe the defendant was trespassing. “If an officer has probable, cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.” Atwater v. City of Lago Vista, 532 U.S. 318, 354, 121 S.Ct. 1536, 1557, 149 L.Ed.2d 549 (2001). When an officer has probable cause to arrest, he may conduct a search prior to the arrest. Cardwell v. Lewis, 417 U.S. 583, 595, 94 S.Ct. 2464, 2471, 41 L.Ed.2d 325 (1974).
The argument between Fields and the defendant could easily have escalated if the deputy had not acted immediately upon noticing the bulge in the defendant’s pocket. Domestic disturbances have a low flash point, and “violence may be lurking and explode with little warning.” Fletcher v. Town of Clinton, 196 F.3d 41, 50 (1st Cir.1999).[4]
After initially resisting, the defendant placed his hands on the love seat and permitted the officer to pat down the defendant’s pants pocket. At that point, the deputy was lawfully taking “such steps as [were] reasonably necessary to protect [his and others’] personal safety____” United States v. Hensley, 469 U.S. 221, 235, 105 S.Ct. 675, 683, 83 L.Ed.2d 604 *262 (1985). The marijuana found in the course of that lawful search was properly admitted in evidence.
While a person is entitled to use reasonable force to resist an unlawful arrest, he is not entitled to resist a lawful arrest. Brown v. Commonwealth, 27 Va.App. 111, 116-17, 497 S.E.2d 527, 529-30 (1998). The deputies arrested on probable cause to believe the defendant was trespassing and possessed marijuana, thus the defendant had no right to resist this lawful arrest.
A lawful arrest, when made with unlawful force, may be resisted. Palmer v. Commonwealth, 143 Va. 592, 602-03, 130 S.E. 398, 401 (1925); Foote v. Commonwealth, 11 Va.App. 61, 66, 396 S.E.2d 851, 856 (1990). “[A]n arrest utilizing excessive force is a battery because that touching is not justified or excused and therefore is unlawful.” Gnadt v. Commonwealth, 27 Va.App. 148, 151, 497 S.E.2d 887, 888 (1998). The officers in this case used reasonable force to subdue the defendant when he refused to submit. The deputies did not use excessive force by ratcheting the force employed when nothing less brought the defendant under control. The defendant was not entitled to resist his lawful arrest made with lawful force.
We conclude the conduct of the deputy sheriffs in responding to this series of events was reasonable under the totality of the circumstances. Accordingly, we affirm.

Affirmed.

. Later searches revealed a rifle behind the bedroom door, five feet from the site of the struggle, and a folding knife in the defendant's right front pants pocket.

. Code § 18.2-119 provides:
If any person without authority of law goes upon or remains upon the lands, buildings or premises of another ... after having been forbidden to do so, either orally or in writing, by the owner, lessee, custodian or other person lawfully in charge thereof ... he shall be guilty of a Class 1 misdemeanor.

. The deputy was answering a complaint, a call for assistance from the homeowner, and he was entering the property of the complainant, not of the defendant. The deputy was not making a warrantless arrest of the defendant in his home as in Payton v. New York, 445 U.S. 573, 574, *261 100 S.Ct. 1371, 1373, 63 L.Ed.2d 639 (1980). Nor was the homeowner prosecuted with evidence seized in the home while executing an arrest warrant for someone else as in Steagald v. United States, 451 U.S. 204, 205, 101 S.Ct. 1642, 1644, 68 L.Ed.2d 38 (1981).

. In recognition of the difficulty of protecting against domestic violence, the General Assembly increased the duties of law-enforcement officers when responding to such incidents. See Code § 19.2-81.3. Police are entitled to arrest without a warrant though the violation does not occur in their presence. They must arrest “the primary physical aggressor” if they develop probable cause unless special circumstances exist. The police must make a written report of any incident in which they have probable cause that "family abuse” occurred and written explanation of the special circumstances if they do not arrest. Finally, if the officer has probable cause to believe that a danger of acts of family abuse exists, he “shall seek an emergency protective order....” "Family abuse" not only includes violence and force resulting in bodily injury, but it also includes a threat that places one in reasonable apprehension of bodily injury. See Code § 16.1-228.