COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, Humphreys and Petty
Argued at Richmond, Virginia


MARCUS GARDENER BLANKS

MEMORANDUM OPINION* BY
v.      Record No. 0950-09-2      JUDGE ROBERT J. HUMPHREYS
MARCH 23, 2010

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Robert G. O'Hara, Jr., Judge Designate[1]

Robert H. Smallenberg (Robert H. Smallenberg, P.C., on brief), for
appellant.

Benjamin H. Katz, Assistant Attorney General (William C. Mims,
Attorney General, on brief), for appellee.


Marcus Gardener Blanks ("Blanks") was convicted in a bench trial, pursuant to a

conditional plea of guilty, of two counts of taking indecent liberties with children in violation of

Code § 18.2-370.1.  He was sentenced to five (5) years of imprisonment for each offense, with

seven (7) years suspended.  On appeal, Blanks specifically claims that the trial court erred in

denying the motion to suppress his statements, arguing that he made them to the police while he

was in custody prior to Miranda warnings being given.  For the following reasons, we disagree

and affirm his convictions.

ANALYSIS

"On appeal from a trial court's denial of a motion to suppress, we must review the

evidence in the light most favorable to the Commonwealth, granting to the Commonwealth all

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Judge Michael C. Allen presided over the motion to suppress.

reasonable inferences fairly deducible from it." Sabo v. Commonwealth, 38 Va. App. 63, 69, 561 S.E.2d 761, 764 (2002) (citing Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991)). This Court "review[s] *de novo* the trial court's application of legal standards . . . to the particular facts of the case," McCracken v. Commonwealth, 39 Va. App. 254, 258, 572 S.E.2d 493, 495 (2002) (citations omitted), but is "bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers," McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc) (quoting Ornelas v. United States, 517 U.S. 690, 699 (1996)). The appellant has the burden of showing that the denial of his suppression motion was reversible error when considering the evidence in the light most favorable to the Commonwealth. McCain v. Commonwealth, 261 Va. 483, 489-90, 545 S.E.2d 541, 545 (2001) (citing Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980)).

When a question arises regarding a confession, "the issue is controlled by that portion of the *Fifth Amendment* . . . commanding that no person shall be compelled in any criminal case to be a witness against himself." Aldridge v. Commonwealth, 44 Va. App. 618, 639, 606 S.E.2d 539, 549 (2004) (quoting Missouri v. Seibert, 542 U.S. 600, 607 (2004) (quoting Bram v. United States, 168 U.S. 532, 542 (1897))) (internal quotations and emphasis omitted). If an "individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning," he must be warned of his right to an attorney and his right to remain silent. Miranda v. Arizona, 384 U.S. 436, 478 (1966). However, "[t]he United States Supreme Court has long recognized that Miranda warnings are implicated only during a custodial interrogation." Aldridge, 44 Va. App. at 641, 606 S.E.2d at 550 (citing Oregon v. Mathiason, 429 U.S. 492, 495 (1977)). Therefore, "'police officers are not required to

administer <u>Miranda</u> warnings to everyone whom they question,' and <u>Miranda</u> warnings are not required when the interviewee's freedom has not been so restricted as to render him or her 'in custody.'" <u>Harris v. Commonwealth</u>, 27 Va. App. 554, 564, 500 S.E.2d 257, 261-62 (1998) (quoting <u>Mathiason</u>, 429 U.S. at 495).

Whether an individual is "in custody" for <u>Miranda</u> purposes is "determined based on the circumstances of each case, and the 'ultimate issue is simply whether there is a "formal arrest or restraint on freedom of movement" of the degree associated with formal arrest.'" <u>Harris</u>, 27 Va. App. at 564, 500 S.E.2d at 262 (quoting <u>California v. Beheler</u>, 463 U.S. 1121, 1125 (1983)). This determination "'depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned.'" <u>Aldridge</u>, 44 Va. App. at 642, 606 S.E.2d at 551 (quoting <u>Stansbury v. California</u>, 511 U.S. 318, 323 (1994)). "If a reasonable person in the suspect's position would have understood that he or she was under arrest, then the police are required to provide <u>Miranda</u> warnings before questioning." <u>Harris</u>, 27 Va. App. at 564, 500 S.E.2d at 262.

The following circumstances are considered in determining whether an individual is "in custody":

> (1) the manner in which the individual is summoned by the police, (2) the familiarity or neutrality of the surroundings, (3) the number of officers present, (4) the degree of physical restraint, (5) the duration and character of the interrogation, and (6) the extent to which the officers' beliefs concerning the potential culpability of the individual being questioned were manifested to the individual.

<u>Harris</u>, 27 Va. App. at 565, 500 S.E.2d at 262. But, "[n]o single factor is dispositive of the issue." <u>Id.</u> at 566, 500 S.E.2d at 262 (citing <u>Wass v. Commonwealth</u>, 5 Va. App. 27, 33, 359 S.E.2d 836, 839 (1987)).

In this case, Blanks voluntarily went to the police station. Blanks initiated the contact with Detective Younce ("Younce"), and voluntarily agreed to a time to go down to the police

- 3 -

station for an interview. Younce did not coerce him into coming to the police station, nor did she pick him up. While Blanks's wife led him to believe everything was going to be okay, that he would just need to answer a few questions, and that all they needed would be family counseling, this expectation was created by his wife and not by the police. A reasonable person would not believe they were in custody when they voluntarily set up the meeting time, and voluntarily drove themselves to the police station.

An interview is not automatically a custodial situation merely because it takes place at the police station. "'[T]he requirements of warnings [are not] to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect.'" Aldridge, 44 Va. App. at 644, 600 S.E.2d at 552 (quoting Mathiason, 429 U.S. at 495). "It is the custodial nature rather than the location of the interrogation that triggers the necessity of giving Miranda warnings." Coleman v. Commonwealth, 226 Va. 31, 47, 307 S.E.2d 864, 872 (1983). Blanks voluntarily went to the police station, and was escorted to an interview room by Younce. Younce reminded Blanks that he came voluntarily and was free to leave and that she would be happy to show him out. The interview room was located in Younce's division, and it contained three chairs, was about eight feet by five feet, had no windows, was carpeted, and painted red with white trim. The location of the interview does not weigh in favor of a finding that Blanks was in custody.

Turning to the number of officers present, Younce met Blanks in the lobby of the police station, and escorted him to the interview room. Younce was the only officer present in the room during the interview. Detective Sergeant Wessel ("Wessel") was outside the interview room only to observe Younce's interview techniques, and was not involved in the actual interview. Wessel's only interaction with Blanks was to perform a "pat-down search" prior to allowing him to enter the restroom alone, and then he escorted him back to the interview room along with

- 4 -

Younce where he left them. While Blanks saw other police officers in the building at the time he was escorted to the room, it is a police station that many know will contain officers. A reasonable person would not conclude that the presence of other officers in the police station turns his situation into a custody situation, nor would the person conclude that they are in custody when only one officer is conducting the interview.

No physical restraints were used from the time Blanks entered the police station to the completion of the interview, roughly sixty-five minutes later. In addition, the interview room door was not locked, and Blanks was notified of this fact. Also, the only items in the interview room were three chairs. While one of the chairs had to be moved from in front of the door when Blanks left to use the restroom, nothing in the room physically restrained him. Younce's chair was close to Blanks so that she could have reached out and touched him, but she did not do so. Also, while Wessel conducted a pat-down search of Blanks prior to his using the restroom, he did not physically restrain Blanks once the pat down was concluded or when he escorted him back to the room. Lastly, Blanks was not handcuffed at any point in the interview. Based on these facts, a reasonable person would not objectively feel he was physically restrained.

Similarly, a reasonable person would not have concluded from the duration and character of the interview that he was not free to leave. Once the interview started, it lasted only sixty-five minutes. During that period of time Younce left Blanks alone for a few minutes and Blanks was permitted to use the restroom. So the duration of the actual interview was less than the overall sixty-five minutes. Also, Younce informed Blanks at the outset that he was free to leave and she would escort him back out. These factors do not weigh in favor of Blanks being in custody at this time.

Lastly, with regard to whether Younce manifested a belief concerning Blanks's potential culpability,

a consideration of this factor "encompasses the degree to which it was conveyed to the suspect that he or she was the focus of a criminal investigation," and it also "includes circumstances such as the appearance of probable cause to arrest and the extent to which the individual is confronted with evidence of guilt."

Aldridge, 44 Va. App. at 645, 606 S.E.2d 552-53 (quoting Harris, 27 Va. App. at 566 n.2, 500 S.E.2d at 262 n.2). The United States Supreme Court noted in Stansbury,

"[a]n officer's knowledge or beliefs may bear upon the custody issue if they are conveyed, by word or deed, to the individual being questioned. Those beliefs are relevant only to the extent they would affect how a reasonable person in the position of the individual being questioned would gauge the breadth of his or her "'freedom of action.'" Even a clear statement from an officer that the person under interrogation is a prime suspect is not, in itself, dispositive of the custody issue, for some suspects are free to come and go until the police decide to make an arrest. The weight and pertinence of any communications regarding the officer's degree of suspicion *will depend upon the facts and circumstances of the particular case.*"

Id. at 646, 606 S.E.2d at 553 (quoting Stansbury, 511 U.S. at 324-25) (emphasis added).

[A]n officer's views concerning the nature of an interrogation, or beliefs concerning the potential culpability of the individual being questioned, may be *one among many factors* that bear upon the assessment whether that individual was in custody, but only if the officer's views or beliefs were somehow manifested to the individual under interrogation and would have affected how a reasonable person in that position would perceive his or her freedom to leave.

Stansbury, 511 U.S. at 325 (emphasis added).

This case is similar to the federal case Thompson v. Keohane, 145 F.3d 1341, 1341 (9th Cir. 1998), in which the officers conveyed several times to the defendant that they thought he was the one who committed the crime. See Thompson v. Keohane, 516 U.S. 99, 103 (1995).[2] In

---

[2] Although the Ninth Circuit Court of Appeals affirmed "without published opinion," Thompson, 145 F.3d at 1341, the United States Supreme Court provided the pertinent factual findings and procedural history in an earlier published opinion that was limited to the determination of the proper standard for appellate review and remanded to the Court of Appeals for application of that standard. Thompson, 516 U.S. 99.

Thompson, the Ninth Circuit affirmed the trial court's holding that Thompson was not in custody when he spoke with the officers at the police station. Thompson, 145 F.3d at 1341. He drove himself to the station house to purportedly identify some evidence, and then stayed at the headquarters for two more hours while the officers questioned him in a small interrogation room while tape recording the interview. Thompson, 516 U.S. at 103. "Although [the officers] constantly assured Thompson he was free to leave, they also told him repeatedly that they knew he had killed his former wife." Id. Thompson eventually confessed to the crime. Id.

Here, just as in Thompson, the record shows that Younce began the interview by informing Blanks that she had interviewed his stepdaughter and that she believed the stepdaughter to be truthful and her version of the events to be credible. She also told Blanks he was being dishonest when he said that he did not touch himself. While the tenor of the interview was at times accusatory, "[a]ny interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime." Mathiason, 429 U.S. at 495. Although Younce conveyed by word to Blanks her belief regarding the facts of the situation, and this weighs in favor of a reasonable person concluding that their freedom was restricted, it is one among many factors to consider whether a reasonable person in Blanks's position would believe his freedom of movement was restricted.

Based on the totality of the evidence viewed in the light favorable to the Commonwealth, we hold that Blanks was not deprived of his freedom of movement such that he was in custody at the time of his interview. Thus, the detectives were not required to advise Blanks of his Miranda rights prior to his arrest because he was not in custody. We, therefore, hold that the trial court did not err in denying the motion to suppress.

Affirmed.