**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 09-1172

LAWRENCE W. TRULL,

            Plaintiff - Appellant,

      v.

FRANCIS D. SMOLKA; BRIAN W. TANNER; COUNTY OF HENRICO,

            Defendants - Appellees.

Appeal from the United States District Court for the Eastern
District of Virginia, at Richmond.  Henry E. Hudson, District
Judge.  (3:08-cv-00460-HEH)

Argued:  December 8, 2010          Decided:  February 18, 2011

Before WILKINSON and NIEMEYER, Circuit Judges, and Patrick
Michael DUFFY, Senior United States District Judge for the
District of South Carolina, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Thomas Hunt Roberts, THOMAS H. ROBERTS & ASSOCIATES, PC,
Richmond, Virginia, for Appellant.  Benjamin Adelbert Thorp, IV,
OFFICE OF THE COUNTY ATTORNEY, Henrico, Virginia, for Appellees.
**ON BRIEF:** Joseph P. Rapisarda, Jr., Karen M. Adams, OFFICE OF
THE COUNTY ATTORNEY, Henrico, Virginia, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

                                 I.

On May 9, 2008, Lawrence W. Trull ("Trull" or "Appellant") filed a Complaint in the Circuit Court for the County of Henrico, Virginia asserting federal and state causes of action arising out of events that took place when Officer Francis D. Smolka and Officer Brian W. Tanner ("Smolka" and "Tanner" or collectively "the officers") responded to a 911 call regarding a domestic dispute between him and his wife, Ms. Mary Picchi ("Picchi"). Defendants Smolka, Tanner, and County of Henrico (collectively "Appellees") removed the case to federal court based on the federal claims asserted by Trull. On September 18, 2008 the district court granted Appellees motion to dismiss as to three causes of action that related to the entry into the bathroom where they found Trull. On January 14, 2009, the district court granted Appellees motion for summary judgment as to the remaining claims and dismissed the suit. Appellant has appealed. We possess jurisdiction to hear this appeal pursuant to 28 U.S.C. § 1291. As explained below, we affirm.


                                 II.

On May 13, 2006, Officers Smolka and Tanner of the County of Henrico police department responded to a 911 call reporting a domestic dispute at 5403 Riverdale Drive in the County of

                                  2

Henrico ("the residence"). The call was placed from that residence by Picchi. At the time of the incident, Trull and Picchi were married and lived at the residence together. Prior to arriving at the residence, the officers understood that the caller alleged that her husband had threatened to have her removed from the home.

When the officers arrived, Picchi invited them in and explained that Trull had contacted his daughter to have Picchi removed from the house. There were no signs that the altercation between Picchi and Trull had been physical. Additionally, she informed the officers that an antique firearm may have been in the house, but she was not sure of its location. Pursuant to Picchi's consent, the officers conducted a brief exploration of a back bedroom. However, they were unable to locate the firearm.

Trull is disabled; he is in a wheelchair. When the officers arrived at the residence, he was inside the main hallway bathroom. The door was closed and locked. The officers ordered Trull to come out of the bathroom. He stated a general unwillingness to exit the bathroom and explained that he was in a wheelchair. When he did not comply with the officers' request to exit the bathroom, they used force to enter. The amount of force was such that the door was not damaged.

3

Trull alleged in his Complaint that when the officers opened the door he was knocked "violently across the bathroom." He maintains that he was so frightened that he urinated on himself, had severe anxiety, had chest pains, and suffered emotional injury. Once the door was opened, he exited the bathroom pursuant to the officers' directions.

After exiting the bathroom, Trull proceeded into the kitchen. Tanner told Trull that Picchi had a right to stay in the residence and suggested that he could stay with his family members living in the area. Trull responded that he could not, because his daughter's home was not wheelchair accessible.

At some point, the officers became aware that Trull was experiencing worrisome medical symptoms including chest tightness. In response, they radioed for EMS assistance. EMS arrived shortly after the call. Trull's daughter and her boyfriend arrived around the same time as the EMS and went to his side. While EMS was assessing Trull's condition, his daughter and her boyfriend were asked to step away, but they continued to speak with him during this time.

Trull initially told them that he did not want to go to the hospital. The officers were clear that they thought he should go to the hospital. For example, Smolka told one of the EMTs that he thought Trull should go to the hospital. Additionally, Trull's daughter encouraged the EMTs to take her father to the

4

hospital. He was never handcuffed, he did not attempt to leave the kitchen until the EMTs placed him on a stretcher, and he did not resist when EMTs offered to physically help him out of the wheelchair.

The officers did not tell Trull that he was required to go to the hospital, threaten him with arrest if he did not go, or make any other showing of force to persuade him to go. They did not assist Trull out of the wheelchair, help him into the ambulance, or accompany him to the hospital. Approximately 30 minutes after he exited the bathroom, Trull departed from the residence and traveled to St. Mary's Hospital in the ambulance.


III.

A.

Appellant appeals from the district court's order dismissing numerous claims pursuant to Fed. R. Civ. P. 12(b)(6). We review a district court's dismissal of claims under Fed. R. Civ. P. 12(b)(6) de novo. Andrew v. Clark, 561 F.3d 261, 264 (4th Cir. 2009). A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the sufficiency of the complaint and therefore we accept as true the facts alleged in the complaint and determine whether they support a plausible claim for relief. See Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). Legal conclusions without

5

facts making them plausible are insufficient to survive a motion to dismiss.  See id.

                                   B.

     We first address Appellant's argument that the district court erred in holding that Trull failed to state a claim that the entry into the bathroom violated the Constitution.  We find that in this case, the officers' actions were justified by the exigent circumstances.

     The exigent circumstances exception to the warrant requirement "basically encompasses officer safety and the destruction of easily-disposed evidence." Figg v. Schroeder, 312 F.3d 625, 639 (4th Cir. 2002) (quoting Gould v. Davis, 165 F.3d 265, 270-71 (4th Cir. 1998)). The exception is triggered when officers have a "reasonable suspicion" that such circumstances exist at the time of the search or seizure in question. Id. (citing United States v. Grogins, 163 F.3d 795, 797 (4th Cir. 1998)).  Generally, reasonable judgments of the officers on scene are not second guessed by the courts.  Id. (citing United States v. Montoya de Hernandez, 473 U.S. 531, 542 (1985)). However, "the burden is on the government to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries."  Welsh v. Wisconsin, 466 U.S. 740, 749 (1984).

With that framework in mind, the issue is whether the officers' entry into the bathroom can be justified based on exigent circumstances. Specifically, whether based upon the facts known to the officers at the time they entered the bathroom, the entry was justified by a concern for safety.

The officers were at the residence responding to a domestic situation, Trull refused to exit the bathroom to talk with them, and they were under the impression that there may have been a gun somewhere in the residence. The officers were justified in concluding that a person involved in a marital spat, who was refusing to speak with officers, could be a threat to them while they were in the home discussing the dispute with his wife. Under these circumstances, the officers were also correct in concluding Trull could be a threat to himself. Therefore, the entry into the bathroom was justified by the exigent circumstances.

Appellant argues that Georgia v. Randolph, 547 U.S. 103 (2006), requires a holding that the officers violated Trull's Fourth Amendment rights by entering the bathroom when he objected. He argues that Picchi's consent to the entry into the house and bathroom did not trump Trull's refusal of consent. We disagree with that reading of Randolph, because here the officers were investigating a domestic situation rather than conducting a search for evidence of a crime.

In Randolph, Janet Randolph called the police to report a domestic situation  Id. at 107.  She complained to police about her husband's drug use, claimed that it created financial issues which impacted their marriage, and consented to a search of the marital residence.  Id.  Her husband was at the scene, refused consent, and objected to the search.  Id.  The officers searched and found evidence they sought to use against Randolph in a criminal prosecution.  Id.  The Court held that the evidence should be suppressed, because the search violated his Fourth Amendment right to be free from unreasonable search and seizure. Id. at 114 ("Since the co-tenant wishing to open the door to a third party has no recognized authority in law or social practice to prevail over a present and objecting co-tenant, his disputed invitation, without more, gives a police officer no better claim to reasonableness in entering than the officer would have in the absence of any consent at all").

The Court noted that a search for evidence based on consent to search a dwelling was different than law enforcement's need to enter a home for purposes of investigating a domestic situation.  Randolph, 547 U.S. at 118.  Specifically, the court stated the distinction as follows:

> But this case has no bearing on the capacity of the
> police to protect domestic victims. The dissent's
> argument rests on the failure to distinguish two
> different issues: when the police may enter without
> committing a trespass, and when the police may enter

to search for evidence. No question has been raised, or reasonably could be, about the authority of the police to enter a dwelling to protect a resident from domestic violence; so long as they have good reason to believe such a threat exists, it would be silly to suggest that the police would commit a tort by entering, say, to give a complaining tenant the opportunity to collect belongings and get out safely, or to determine whether violence (or threat of violence) has just occurred or is about to (or soon will) occur, however much a spouse or other co-tenant objected. . . .

Id. at 118.

In this case, the situation contemplated in Randolph occurred. The police arrived at the residence based on a report of a domestic disturbance. There was no outward evidence that there was any violence, but a definite determination could not be made without talking to both parties. The facts of this case fall outside the holding in Randolph, but are within the situation contemplated in the above quoted portion of that opinion.

Additionally, the need for the officers to enter the bathroom to interview Trull is supported by Virginia law. Virginia Code section 19.2-81.3 provides the framework that officers are required to follow when dealing with a domestic situation. The statute does not speak in terms of creating duties, but does provide specific actions that officers should follow, especially relevant are sections B and C. They provide as follows:

9

B. A law-enforcement officer having probable cause to believe that [an assault and battery or violation of a protective order] has occurred shall arrest and take into custody the person he has probable cause to believe, based on the totality of the circumstances, was the predominant physical aggressor unless there are special circumstances which would dictate a course of action other than an arrest. The standards for determining who is the predominant physical aggressor shall be based on the following considerations: (i) who was the first aggressor, (ii) the protection of the health and safety of family and household members, (iii) prior complaints of family abuse by the allegedly abusing person involving the family or household members, (iv) the relative severity of the injuries inflicted on persons involved in the incident, (v) whether any injuries were inflicted in self-defense, (vi) witness statements, and (vii) other observations.

C. Regardless of whether an arrest is made, the officer shall file a written report with his department, which shall state whether any arrests were made, and if so, the number of arrests, specifically including any incident in which he has probable cause to believe family abuse has occurred, and, where required, including a complete statement in writing that there are special circumstances that would dictate a course of action other than an arrest. The officer shall provide the allegedly abused person, both orally and in writing, information regarding the legal and community resources available to the allegedly abused person. Upon request of the allegedly abused person, the department shall make a summary of the report available to the allegedly abused person.

Va. Code § 19.2-81.3.

The record does not show the officers had evidence of any violence at the scene. However, courts have recognized that domestic situations can escalate quickly: "[d]omestic disturbances have a low flash point, and 'violence may be lurking and explode with little warning.'" McCracken v.

10

Commonwealth, 572 S.E.2d 493, 496 (Va. Ct. App. 2002) (quoting Fletcher v. Town of Clinton, 196 F.3d 41, 50 (1st Cir. 1999)). In McCracken, a case with facts vastly different than these, the court noted that Virginia Code section 19.2-81.3 created officer duties. Id. at n. 4 ("In recognition of the difficulty of protecting against domestic violence, the General Assembly increased the duties of law-enforcement officers when responding to such incidents," by enacting section 19.2-81.3).

Therefore, as the officers' entry into the bathroom was justified by the exigent circumstances, Randolph is distinguishable, and Virginia statutory law further supports the officers' actions, we find that the officers did not violate Trull's constitutional rights by entering the bathroom.

C.

Next, Trull argues that the district court erred in dismissing his claim that the officers violated his Fourth Amendment rights by using excessive force when they entered the bathroom. The Complaint alleged that the door hit his wheelchair "knocking Trull and his wheelchair violently across the bathroom and causing Trull so much shock and fright that he urinated upon himself and causing him to experience high blood pressure, shortness of breath and tightness in his chest." Complaint ¶ 14, in Joint Appendix at 10.

11

In Sigman v. Town of Chapel Hill, this court affirmed a grant of summary judgment in favor of an officer who was sued for fatally wounding the plaintiff. 161 F.3d 782, 784 (4th Cir. 1998). The evidence presented as part of the motion for summary judgment was not totally clear as to whether the decedent was holding a knife. Id. at 787. The court rejected the assertion that difference in the witness testimony created a material issue of fact, because the focus is on what the officer reasonably perceived and whether his action was reasonable in light of those circumstances. Id. ("What matters is . . . whether *they* undertook an objectively reasonable investigation with respect to that information in light of the exigent circumstances *they faced*," quoting Gooden v. Howard County, 954 F.2d 960, 965 (4th Cir. 1992) (en banc) (emphasis added by the court)). The record is clear that Trull was shaken up by the events. In fact, the officers thought he should go to the hospital. However, given the circumstances, it was appropriate to force the door open to determine whether Trull was armed or dangerous. The force used was enough to startle Trull, but was mild enough that the door was not damaged in any way.

Therefore, based on the information known to the officers and in light of the exigent circumstances, they undertook an objectively reasonable course of action.

D.

In addition to the district court's holding as to the constitutional claims, Trull also appeals the dismissal of his state law claim for trespass. We find that the district court properly dismissed that claim.

Trespass is the "unauthorized entry onto property that results in interference with the property owner's interest." Cooper v. Horn, 448 S.E.2d 403, 406 (Va. 1994). Therefore, if the entry on the property was authorized by law, then the claim for trespass cannot be successful. As discussed above, the officers lawfully entered the house and lawfully entered the bathroom.

E.

In addition to the claims against the officers, Appellant maintains that the County of Henrico is liable for its failure to train the police officers correctly. The district court dismissed Appellant's claim seeking a declaratory judgment that the officers violated Trull's rights under the Virginia Constitution. On appeal Appellant argues that the county is liable for a failure to train the officers. However, as the officers' conduct did not violate any of Trull's constitutional rights, his claim cannot be successfully maintained.

In City of Canton, Ohio v. Harris, the Court held that under certain limited circumstances, a municipality could be

13

held liable for a failure to train police.  489 U.S. 378, 388 (1989) (stating that "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact").  However, there must be a link between the inadequacy of the training and the deprivation of a constitutional right, because the "first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation."  Id. at 385.  Having determined that there was no deprivation of a constitutional right, this claim fails.

IV.

A.

Appellant also appeals from the district court's order granting summary judgment in favor of the Appellees.  We review a district court's grant of summary judgment de novo.  See PCS Phosphate Co. v. Norfolk S. Corp., 559 F.3d 212, 217 (4th Cir. 2009) (stating that "[w]e review the district court's rulings on summary judgment de novo").

In reviewing a district court's grant of summary judgment de novo, we draw all reasonable inferences in favor of the appellant.  See Doe v. Kidd, 501 F.3d 348, 353 (4th Cir. 2007),

14

cert. denied 552 U.S. 1243 (2008) ("We review the district court's summary judgment ruling de novo, viewing the facts in the light most favorable to Doe as the non-moving party and drawing all reasonable inferences in her favor") (internal citation omitted).

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2)(2009). The moving party bears the burden of showing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986); Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979). In Charbonnages, the court stated the standard as follows:

> the nonmoving party would on trial carry the burden of proof, he is therefore entitled . . . to have the credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, all internal conflicts in it resolved favorably to him, the most favorable of possible alternative inferences from it drawn in his behalf; and finally, to be given the benefit of all favorable legal theories invoked by the evidence so considered.

Charbonnages, 597 F.2d at 414.

Trull argues that the district court erred in granting summary judgment as to his claim that the officers violated his constitutional rights by having him come into the kitchen to continue the investigation, and also by their actions relating to the decision that he would go to the hospital. He claims summary judgment was inappropriate because genuine issues of material fact existed as to whether the officers' actions resulted in an unconstitutional seizure.

In United States v. Mendenhall, the Supreme Court explained that a person is "seized" only when, by means of physical force or show of authority, his freedom of movement is restrained. 446 U.S. 544, 553 (1980). Only when such restraint is imposed is there any foundation for invoking constitutional safeguards. Id. The purpose of the Fourth Amendment is not to eliminate all contact between the police and the citizenry, but "to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals." Id. at 554 (quoting United States v. Martinez-Fuerte, 428 U.S. 543, 554 (1976)). "As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification." Id.

Appellees admit that a seizure occurred when the officers ordered Trull out of the bathroom and briefly detained him in the kitchen. However, the seizure was not unreasonable so it did not violate the Fourth Amendment's protection from unreasonable seizure. The officers were investigating a domestic situation and still searching for a gun. This brief seizure amounted to little more than initial questioning of the subject of a 911 call. Additionally, the seizure was justified by the exigent circumstances: the officers were in the middle of an investigation, Trull had been uncooperative, and they had not yet located the firearm. As such, the exigent circumstances justified this brief seizure. See Figg, 312 F.3d at 639. Thus, we affirm because the brief seizure was reasonable.

Additionally, the district court correctly held that the seizure did not continue when Trull went to the hospital. The seizure ended when the questioning was completed and Trull was free to leave. The officers never told Trull that he had to go to the hospital. The EMS assisted him onto the stretcher. In fact, the record is devoid of any evidence tending to show that the officers forced Trull to go to the hospital by physical force or a showing of force. Therefore, the seizure did not continue in the ambulance, because a person is "seized" only when, by means of physical force or show of authority, his freedom of movement is restrained. Mendenhall, 446 U.S. at 553.

17

C.

We also affirm the district court's order granting summary judgment as to the claims for assault and battery and false imprisonment. The assault and battery claim was properly disposed of at summary judgment, because the court correctly decided that the seizure was reasonable and did not violate the Fourth Amendment. The same is true of the claim for false imprisonment. See Dechene v. Smallwood, 311 S.E.2d 749, 752 (Va. 1984) (stating that a lawful arrest by police cannot form the basis for assault and battery or false imprisonment claim). Therefore, we affirm summary judgment as to these state law claims.

V.

For the reasons above, we affirm the district court's orders. Because we find that no constitutional violation occurred, we need not address qualified immunity.

AFFIRMED

18