COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, O'Brien and AtLee
Argued at Lexington, Virginia

**PUBLISHED**

BRANDON SCOTT BLANKENSHIP

OPINION BY
v.        Record No. 1455-18-3        JUDGE ROBERT J. HUMPHREYS
                                      MARCH 10, 2020

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ROANOKE COUNTY
Charles N. Dorsey, Judge

Wilson C. Pasley (Wilson C. Pasley, PLC, on brief), for appellant.

A. Anne Lloyd, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


On February 2, 2018, a grand jury for the Circuit Court for the County of Roanoke

("circuit court") indicted appellant Brandon Scott Blankenship ("Blankenship") for: three counts

of assault and battery on a law enforcement officer, in violation of Code § 18.2-57; one count of

assault on a law enforcement animal, in violation of Code § 18.2-144.1; one count of assault and

battery, in violation of Code § 18.2-57; one count of obstruction of justice, in violation of Code

§ 18.2-460; and one count of animal cruelty, in violation of Code § 3.2-6570. The indictments

alleged that the offenses occurred on or about May 26, 2017.

Blankenship pled not guilty to all charges and waived his right to a jury trial. At the

conclusion of the Commonwealth's evidence, Blankenship moved to strike the Commonwealth's

evidence. The circuit court granted that motion with respect to one count of assault and battery

on a law enforcement officer, the count of assault on a law enforcement animal, and the count of

obstruction of justice. Following a bench trial, the circuit court convicted Blankenship of the

remaining two counts of assault and battery on a law enforcement officer, assault and battery,

and animal cruelty. The circuit court sentenced Blankenship to a total of eleven years and twenty-four months' incarceration, with all but two years and eight months suspended.[1] On appeal, Blankenship assigns error to the sufficiency of the evidence to convict him of each of the four offenses.

## I. BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party at trial." Scott v. Commonwealth, 292 Va. 380, 381 (2016) (citing Baldwin v. Commonwealth, 274 Va. 276, 278 (2007)). Accordingly, we will "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." Kelley v. Commonwealth, 289 Va. 463, 467-68 (2015) (quoting Parks v. Commonwealth, 221 Va. 492, 498 (1980)).

On May 26, 2017, Blankenship showed up at Wally Andrews's ("Andrews") home, though Andrews previously "ordered" Blankenship to not come onto his property. Andrews and several others were standing outside on the porch and carport attached to Andrews's home. Blankenship stood on a hill outside the home, and when Andrews told him, "It's best to move off the hill," Blankenship replied, "The best thing you could do is you better call 911." Andrews asked Blankenship to leave his property. Rather than leave, Blankenship continued cursing at Andrews, told Andrews to call the police, and told Andrews "I'm going to kill you." When Blankenship threatened to kill Andrews, he came within approximately twenty feet of Andrews. Blankenship kept moving "[b]ack and forth" toward Andrews. "[Blankenship] would walk up to [a rock wall outside Andrews's home], started [sic] up the steps, and then he'd back off down that several times." Essentially, Blankenship was acting "crazy," and Andrews was concerned

---

[1] While not before us, we are remanding for clarification of this sentence.

"what he might try to do" to the other people standing outside Andrews's home. Andrews called the police.

Officers Engle, Cundiff, and O'Brien, along with police K-9 Titan, responded to Andrews's home. Titan was trained to bite and hold a suspect as part of his suspect apprehension certification. Even if a suspect resisted, Titan was trained to "hold and not let go, [to] still engage." When Officer Engle arrived, he saw Blankenship standing in the middle of the road, seeming "visibly upset that we were there." After seeing the police arrive, Blankenship shook his fist at the officers while standing a few feet away from them. All of the officers wore their police uniforms and displayed their badges. Officers Engle and Cundiff attempted to talk to Blankenship, but "[h]e started just cursing [at them] and telling [them] something about bodies being buried underneath a doghouse." Based on this behavior, Officer Engle suspected that Blankenship "was under the influence of some sort of narcotics or alcohol." The officers tried to calm Blankenship down, but "he would get more amped up." Blankenship continued "screaming" and "yelling" at the officers, telling them that they "were not the real police," to "F off," and "that there were dead bodies in the house." At one point, Blankenship told the officers "I have weed in my pocket. Arrest me, motherfuckers."

The officers "felt . . . a little nervous . . . that he was going to be aggressive with [them] once [they] walked up to arrest him," so they kept their distance. Eventually, the officers told Blankenship that he was going to be arrested for public intoxication, to which he responded, "You're not going to fucking touch me." When the officers attempted to move in closer to effectuate the arrest, Blankenship balled up his fists and took a fighting stance toward the officers. "[F]earing that he was going to try to lunge [or] punch one of" the officers, the officers backed up. The officers tried one more time to effectuate the arrest but Blankenship again balled up his fists, took a step forward, and took a fighting stance toward the officers. Officer Engle

"felt threatened" and gave Blankenship commands to get on the ground, warning that he would release Titan if Blankenship did not comply. Blankenship did not get on the ground. Officer O'Brien then pepper sprayed Blankenship. Blankenship immediately took off running, so Officer Engle released Titan and gave the command to apprehend.

Once Titan was close enough to apprehend Blankenship, Blankenship turned around and punched Titan in the side of the head. Titan "went off to the side," but then "came back on as they continued to run." "Blankenship again continued to swing, and actually kicked [Titan] in the front chest area." Titan continued chasing Blankenship, and at some point Blankenship tripped and fell. Blankenship then "repeatedly [took] a very strong balled fist and repeatedly punched [Titan] in the ribs." At some point, Officer Engle saw Blankenship kick Titan "somewhere in his stomach/ab area." The kick caused Titan to "bounce[] back as [if] he didn't want to engage him more." Titan then backed off, which was "not typical for him to do" and was not what Titan was trained to do.

About a week or two later, Titan stopped eating and seemed lethargic. Officer Engle took him to see Dr. Czarnecki, Titan's veterinarian. Dr. Czarnecki noticed that Titan "was having some issues related to his digestion, and . . . wasn't healing at a level that [the veterinarian] was comfortable with." Although Dr. Czarnecki was able to rule out more serious internal injuries, he did still find that Titan had a "digestive injury." Additionally, Dr. Czarnecki testified at trial, as an expert witness, that "dogs have the same anatomy as people with respect to sensing pain," and dogs generally do feel pain even if "you wouldn't know it by their external behaviors." While Dr. Czarnecki would expect Titan to not exhibit any outward expression of an injury, he opined that Titan would have felt pain when kicked with enough force to be physically moved.

On February 22, 2018, the circuit court held a bench trial. The Commonwealth presented the testimony of Andrews, Officer Engle, Officer O'Brien, and Dr. Czarnecki. After the Commonwealth rested, Blankenship made several motions to strike. The circuit court sustained the motions to strike with respect to the charge for assault and battery on a law enforcement animal, the charge for obstruction of justice, and one count of assault and battery on a law enforcement officer with respect to Officer Cundiff. The circuit court overruled the motions to strike on the remaining two counts of assault and battery on a law enforcement officer, one count of assault and battery, and one count of animal cruelty. Blankenship then testified. After the defense rested, Blankenship moved to strike the remaining charges. In response to Blankenship's argument that the assault and battery should be struck because the evidence was insufficient to establish a battery on Andrews, the circuit court stated, "that on the assault and battery on Mr. Andrews, it would be assault as a lesser included." The circuit court overruled those motions and found Blankenship guilty of the remaining four offenses. This appeal follows.

## II. ANALYSIS

### A. Standard of Review

When reviewing the "sufficiency of the evidence to support the conviction, the relevant question is . . . whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Sullivan v. Commonwealth, 280 Va. 672, 676 (2010) (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979)). We will defer to the findings of fact made by the circuit court "at a bench trial if there is evidence to support them and will not set a judgment aside unless it appears from the evidence that the judgment is plainly wrong." Id. (citing Code § 8.01-680).

"The sole responsibility to determine the credibility of witnesses, the weight to be given to their testimony, and the inferences to be drawn from proven facts lies with the fact finder."

Ragland v. Commonwealth, 67 Va. App. 519, 529-30 (2017) (citing Commonwealth v. McNeal, 282 Va. 16, 22 (2011)).  In a bench trial, the trial judge's "major role is the determination of fact, and with experience in fulfilling that role comes expertise."  Haskins v. Commonwealth, 44 Va. App. 1, 11 (2004) (quoting Anderson v. Bessemer City, 470 U.S. 564, 574-75 (1985)).

## B.  Assault and Battery

Code § 18.2-57 provides that "[a]ny person who commits a simple assault or assault and battery is guilty of a Class 1 misdemeanor."  Code § 18.2-57(A).  Additionally, "if any person commits an assault or an assault and battery against another knowing or having reason to know that such other person is a . . . law-enforcement officer," such person is guilty of a Class 6 felony.  Code § 18.2-57(C).

"Virginia, like many jurisdictions, 'has merged the common law crime and tort of assault so that today, a common law assault [punishable as a criminal offense] occurs when either set of elements is proved.'"  Clark v. Commonwealth, 54 Va. App. 120, 128 (2009) (alteration in original) (quoting Carter v. Commonwealth, 269 Va. 44, 46 (2005)).  Because we have merged the common law crime and tort of assault, there are three separate ways the Commonwealth can establish the crime of assault and battery under Code § 18.2-57:  (1) by proving a battery; (2) by proving common law criminal assault; or (3) by proving common law tortious assault.  See Parish v. Commonwealth, 56 Va. App. 324, 329 (2010) ("The crime of assault and the crime of battery are independent criminal acts, although they are linked in Code § 18.2-57.").  Proof sufficient to establish any one of these theories is sufficient to establish the crime of assault and battery.

Code § 18.2-57 does not define assault or battery, so we must look to the common law definition of the terms.  Id. (citing Clark v. Commonwealth, 279 Va. 636, 641 (2010), aff'g 54 Va. App. 120, 128 (2009) (*en banc*)).  First, the Commonwealth can prove a battery by

establishing "a 'wil[l]ful battery or touching' of another." Id. at 330 (alteration in original) (quoting Wood v. Commonwealth, 149 Va. 401, 404 (1927)). Second, the Commonwealth can prove common law criminal assault by establishing that the defendant engaged in an overt act intended to inflict bodily harm with the present ability to inflict such harm. Clark, 54 Va. App. at 128 (quoting Carter, 269 Va. at 47). Third, the Commonwealth can prove common law tortious assault, sometimes referred to in our jurisprudence as the "merged tort law definition," by establishing that the defendant engaged "in an overt act intended to place the victim in fear or apprehension of bodily harm," which did in fact create "such reasonable fear or apprehension in the victim." Id. (quoting Carter, 269 Va. at 47). For either assault theory, "the bodily harm threatened need not be serious or deadly harm." Id. at 129.

Here, the Commonwealth's theory at trial, to establish assault and battery and two counts of assault and battery on a law enforcement officer, was that Blankenship assaulted Andrews and Officers Engle and O'Brien. "Our case law is clear that words *alone* are never sufficient to constitute an assault under either the traditional criminal definition of assault or the assimilated tort definition." Id. "However, '[w]ords are never spoken in a vacuum, and they cannot be utterly divorced from past conduct, or from the accompanying circumstances.'" Id. (alteration in original) (quoting Restatement (Second) of Torts § 31 cmt. d (Am. Law. Inst. 1965)). "A defendant's words may be highly relevant under both definitions of assault to determining, for example, whether the defendant committed the required overt act with the necessary intent." Id. "Additionally, the defendant's words may be highly relevant under the tort law definition of assault to determining whether the 'fear or apprehension in the victim' was 'reasonable.'" Id.

Traditionally, overt acts include

> an attempt or offer, with force and violence, to do some bodily hurt
> to another, whether from wantonness or malice, by means
> calculated to produce the end if carried into execution; as by
> striking at him with a stick or other weapon, or without a weapon,

> though he be not struck, or *even by raising up the arm or a cane in a menacing manner*, by throwing a bottle of glass with an intent to strike, by leveling [sic] a gun at another within a distance from which, supposing it to be loaded, the contents might injure, or any similar act.

Harper v. Commonwealth, 196 Va. 723, 733 (1955) (emphasis added) (quoting J.A.G. Davis, Criminal Law 353-54 (1838)).

Viewing the totality of the circumstances, Blankenship's overt acts demonstrate his intent to place Officers Engle and O'Brien in fear of bodily harm, which caused the officers to actually and reasonably fear bodily harm. While standing only a few feet from the officers, Blankenship shook his fists at them. Blankenship also repeatedly cursed at the officers, told them to "F off," called them "motherfuckers," and progressively became more "angry," and "amped up." After the officers told Blankenship he was under arrest, he told the officers "you're not going to fucking touch me" and then moved toward the officers while clenching his fists. Each time the officers attempted to effectuate an arrest, Blankenship clenched his fists, took a step toward them, and took a fighting stance. These overt acts, accompanied by Blankenship's threatening statements, demonstrated an intent to cause a fear of bodily harm.

The officers testified that they felt threatened by Blankenship's behavior and that they were concerned it would lead to a physical altercation. Rather than risk Blankenship lunging at or punching one of the officers, the officers told Blankenship to get on the ground. When he did not comply, Officer O'Brien pepper sprayed him, and Officer Engle released Titan. Under the totality of the circumstances, the officers' testimony and actions demonstrate that they reasonably feared a threat of bodily injury. The officers were also wearing their police uniforms with their badges displayed, so Blankenship knew or had reason to know that they were law enforcement officers. Accordingly, a rational trier of fact could have found the essential

elements of the offense beyond a reasonable doubt, and there is evidence to support the circuit court's conviction for two counts of assault and battery on a law enforcement officer.

The totality of the circumstances also supports Blankenship's conviction for assault and battery on Andrews. Blankenship showed up at Andrews's home after he was told that he was not welcome on Andrews's property. Blankenship then told Andrews to call the police several times. When Andrews asked Blankenship to leave, Blankenship, standing about twenty feet away from Andrews, told Andrews "I'm going to kill you." Blankenship also repeatedly moved back and forth toward Andrews, walking up the steps toward Andrews's home and back down again several times. Although words alone are insufficient to constitute assault, considering the attending circumstances, the circuit court, sitting as a factfinder, could reasonably find that Blankenship's overt act of moving towards Andrews while threatening to kill him is sufficient to establish the elements of assault and battery. Thus, the circuit court's conviction of assault and battery on Andrews is not plainly wrong.

## C. Animal Cruelty

Blankenship also challenges the sufficiency of the evidence with respect to his conviction for animal cruelty. The relevant portion of the statute provides that animal cruelty occurs when any person "tortures any animal, *willfully inflicts inhumane injury or pain* not connected with bona fide scientific or medical experimentation on any animal, *or cruelly or unnecessarily beats*, maims, mutilates, or kills any animal, whether belonging to himself or another." Code § 3.2-6570(A) (emphasis added).[2]

---

[2] The Commonwealth argues that Blankenship has waived this assignment of error "because he has failed to support his argument with authority." Rule 5A:20 requires that an opening brief contain "[t]he standard of review and the argument (including principles of law and authorities) relating to each assignment of error." Rule 5A:20(e). "Simply put, '[i]t is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived.'" Bartley v. Commonwealth, 67

Specifically, Blankenship challenges the sufficiency of the evidence to establish that he "willfully inflict[ed] inhumane injury . . . or cruelly or unnecessarily beat[]" Titan because, he asserts, the evidence was insufficient to show that Titan experienced pain and because he alleges his actions were necessary to keep Titan from biting him. The Commonwealth can establish that a defendant willfully inflicted inhumane injury on an animal if it can present evidence that the defendant "voluntarily acted with a consciousness that 'inhumane injury or pain' would result." Pelloni v. Commonwealth, 65 Va. App. 733, 738-40, 743 (2016) (quoting Code § 3.2-6570(F)).

Here, once Titan was within "distance to apprehend" Blankenship, Blankenship turned around and punched Titan in the side of the head. Titan "went off to the side," but then "came back on as they continued to run." "Blankenship again continued to swing, and actually kicked [Titan] in the front chest area." Blankenship later tripped and fell, at which point he repeatedly punched Titan in the ribs. At some point Blankenship also kicked Titan "somewhere in his stomach/ab area." The kick caused Titan to "bounce[] back as [if] he didn't want to engage him more." Titan then backed off, which was "not typical for him to do" and was not what Titan was trained to do. Dr. Czarnecki testified that dogs can feel pain and opined that he would expect Titan felt pain from these repeated blows. Titan stopped eating and seemed lethargic. Although Dr. Czarnecki was able to rule out more serious internal injuries, he did still opine that Titan had a "digestive injury."

---

Va. App. 740, 746 (2017) (alteration in original) (quoting Sneed v. Bd. of Prof'l Responsibility of the Supreme Court of Tenn., 301 S.W.3d 603, 615 (Tenn. 2010)).

Nevertheless, the Rule does not require an appellant to manufacture case law where no analogous cases exist. Blankenship's opening brief cited the animal cruelty statute and developed his argument based on the statute's text. However, if we were to read the Rule to implicitly require citation to case law where little or none exists, an appellant could never challenge a newly-enacted statute. Our precedent on the animal cruelty statute is not well developed. It is true that Blankenship failed to cite the only case construing any portion of this statute, however given the paucity of precedent, we decline the Commonwealth's invitation to default this assignment of error on that basis.

Based on these facts, there was evidence from which the circuit court could find that Blankenship voluntarily acted with a consciousness that inhumane injury or pain would result from punching and kicking Titan.  Moreover, it is axiomatic that a person may not resist a lawful arrest effectuated with reasonable force.  See McCracken v. Commonwealth, 39 Va. App. 254, 262 (2002) (*en banc*).  Officers may use police K-9 dogs as an instrumentality to effectuate an arrest, and the mere use of a police K-9 to apprehend a defendant does not render the use of force unreasonable.  See Robinette v. Barnes, 854 F.2d 909, 913 (6th Cir. 1988).  Thus, Blankenship had no right to resist the lawful arrest by punching and kicking Titan, and his actions were not "necessary."  For these reasons, we hold that the evidence was sufficient to support Blankenship's conviction for animal cruelty.

### D.  Scrivener's Error

The circuit court's sentencing order appears to contain multiple scrivener's errors.  First, it appears from the record that the circuit court, at the sentencing hearing, sentenced Blankenship for two offenses unrelated to the underlying factual circumstances of this case—one count of grand larceny, for which Blankenship was sentenced to two years' imprisonment and one count of assault and battery on a law enforcement officer, for which Blankenship was sentenced to five years' imprisonment.  These two charges were not made part of the appeal before us.  At the same sentencing hearing, the circuit court sentenced Blankenship to three years' imprisonment for each of the two assault and battery on a law enforcement officer charges with respect to Officers Engle and O'Brien.  However, the sentencing order sentenced Blankenship to five years' imprisonment for case number CR17001221, one of the charges for assault and battery on a law enforcement officer related to the factual circumstances of this case.

Second, the circuit court's sentencing order sentenced Blankenship to three years' imprisonment for the misdemeanor assault and battery charge on Andrews.  However, Code

§ 18.2-11 only authorizes a maximum of twelve months' imprisonment for a Class 1 misdemeanor, and the circuit court verbally sentenced Blankenship to twelve months' incarceration on this charge. Finally, at the close of the Commonwealth's evidence, the circuit court struck one count of assault and battery on a law enforcement officer with respect to Officer Cundiff, case number CR18000085. At the close of all the evidence, in ruling on Blankenship's second set of motions to strike, the circuit court found Blankenship guilty of all "the offenses that are still pending, all four of them." The circuit court's sentencing order, however, states that it found Blankenship guilty of five offenses, including three counts of assault and battery on a law enforcement officer, rather than two. The third count of assault and battery on a law enforcement officer, case number CR18000090, was not listed as a case on which Blankenship was arraigned in the circuit court's initial trial order. The circuit court ultimately sentenced Blankenship to twelve months' imprisonment on CR18000090.[3] Accordingly, we remand to the circuit court solely for correction of its sentencing order.

<u>Affirmed and remanded.</u>

---

[3] Because this term of imprisonment does not match the sentence for the unrelated assault and battery on a law enforcement officer, and because the unrelated grand larceny was not included in this sentencing order, it is not clear whether this additional sentence was for the unrelated assault and battery on a law enforcement officer.