COURT OF APPEALS OF VIRGINIA

Present:    Judges Petty, Chafin and Decker
Argued by teleconference


TIMOTHY LAWERENCE DOSCOLI
                                                      OPINION BY
v.      Record No. 0517-15-3               JUDGE WILLIAM G. PETTY
                                                      JUNE 21, 2016
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF STAUNTON
Charles L. Ricketts, III, Judge

Linda L. Czyzyk, Assistant Public Defender, for appellant.

J. Christian Obenshain, Assistant Attorney General  (Mark R.
Herring, Attorney General, on brief), for appellee.


Timothy Lawerence Doscoli was convicted of misdemeanor refusal to aid an officer in

execution of his office in violation of Code § 18.2-463 and felony assault on a law enforcement

officer in violation of Code § 18.2-57.  Doscoli argues that the officers had no probable cause to

arrest him and therefore he had the right to use reasonable force to repel an unlawful arrest.

Because we find the arrest was lawful, we affirm the trial court.

I. BACKGROUND

Officer Minix and Officer Hylton of the City of Staunton Police Department were

dispatched to investigate a 911 "hang-up call" that originated from Doscoli's residence and

which was potentially a domestic assault situation.  The residence was one of two apartments,

whose doors opened into a common area.  While the officers were still in the street, prior to

approaching the house, they could hear a male yell "fuck" from inside Doscoli's residence.

When the officers entered the common area, Doscoli came out of his apartment into the common

area wearing only what appeared to be boxer shorts and yelled, "Get the hell out of here."  When

the officers told Doscoli that they needed to speak to the other person in the residence, he ran into his apartment and slammed the door and locked it. The officers could hear Doscoli continue to use profanity inside the apartment. An elderly man, Fentress Dorn, opened the door and attempted to speak to the officers but Doscoli continually interrupted Officer Minix with yelling and cursing. Officer Minix testified Doscoli was "being confrontational through the whole . . . time [the officers] were trying to speak to [Dorn]." At that point, Officer Minix advised Doscoli that "if [Doscoli] continued to interrupt [his] investigation, [he] was going to place [Doscoli] under arrest for obstruction of justice." The officers were, nonetheless, unable to separate Dorn and Doscoli to speak to them separately. Officer Minix testified that both Doscoli and Dorn had recent wounds on their arms. Additionally, Dorn was red around the top of his chest and was sweating. Officer Minix testified that he was concerned for Dorn because of the fresh wound on his arm and because Doscoli was acting extremely hostile toward Dorn by not allowing him to talk. Dorn's assurances that he had not been assaulted, however, led the officers to conclude they could get no more information from the men.

Officer Minix then instructed Doscoli that he needed to "shut the door, lower his voice and maintain the peace." Doscoli shut the door, and the officers waited for several minutes on the exterior porch common area to make sure Doscoli did maintain the peace. The officers then left the porch and walked down the street. From the street, the officers heard Doscoli yell "fuck them," saw Doscoli pull back the curtain from the window and make a profane hand gesture, and then heard Doscoli yell "fuck you" loud enough to be heard in the street through a closed window. As the officers returned to the common area, Doscoli rushed out of his apartment into the common area and began yelling profanities at the officers. At that point, Officer Minix told Doscoli that he was under arrest for failure to maintain the peace. Officer Minix testified that he

believed Doscoli breached the peace by yelling at the officers and then stepping outside his apartment into the common area to scream profanities.

In resisting arrest, Doscoli fled into the apartment, slammed Officer Minix into the wall, and struggled against the officers' attempts to grab his arms. Officer Minix was forced to discharge his Taser twice against Doscoli, who nonetheless continued to fight. As Officer Minix continued to try to subdue Doscoli, Doscoli slapped the officer on the side of the face. The officer later discovered that Doscoli had smeared his own fecal matter on Officer Minix's face, head, and uniform front.[1] Officer Minix also discovered a scratch on his right hand from the confrontation.

## II. ANALYSIS

Doscoli's sole argument on appeal is that the officers lacked probable cause to arrest him because the profanity he unleashed against the officers did not rise to the level of "fighting words" and was thus protected by the First Amendment. Consequently, Doscoli argues, because the officers had no probable cause to arrest him, he was entitled to use force to resist the unlawful arrest.

We review *de novo* whether a police officer had probable cause to make an arrest. McCain v. Commonwealth, 261 Va. 483, 489, 545 S.E.2d 541, 545 (2001). Likewise, "when the issues are the lawfulness of an arrest and the reasonableness of force used to resist an unlawful arrest, the ultimate questions involve law and fact and are reviewed *de novo* on appeal." Brown v. City of Danville, 44 Va. App. 586, 603, 606 S.E.2d 523, 532 (2004) (quoting Brown v. Commonwealth, 27 Va. App. 111, 117, 497 S.E.2d 527, 530 (1998)). This Court is bound by the trial court's findings of historical fact unless plainly wrong or without evidence to support them.

---

[1] The evidence indicated that one of the Taser electrodes might have lodged in Doscoli's groin area, causing his bowels to empty.

McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*).  We additionally give due weight to the inferences reasonably drawn by the court and by local law enforcement officers.  Id.

"Under the common law, a citizen generally is permitted to use reasonable force to resist an illegal arrest."  Commonwealth v. Hill, 264 Va. 541, 546, 570 S.E.2d 805, 808 (2002) (holding there is no corresponding right to resist an unlawful detention).  However, the act of resisting arrest is fraught with the danger of violence and serious injury to both the officer and the arrestee.  See id. at 548, 570 S.E.2d at 808-09.  Encouraging an arrestee to resist what he considers an unlawful arrest "lead[s] to great mischief with respect to encouraging resistance to, and to endangering, arresting officers."  United States v. Simon, 409 F.2d 474, 477 (7th Cir. 1969) ("We recognize that law enforcement officers are frequently called on to make arrests without warrants and should not be held, so far as their personal security is concerned, to a nicety of distinctions between probable cause and lack of probable cause in differing situations of warrantless arrests.").  Consequently, in our modern society, "[c]lose questions as to whether an officer possesses [probable cause] must be resolved in the courtroom and not fought out on the streets."  McCracken v. Commonwealth, 39 Va. App. 254, 276, 572 S.E.2d 493, 504 (2002) (*en banc*) (quoting Hill, 264 Va. at 548, 570 S.E.2d at 809); New Hampshire v. Haas, 596 A.2d 127, 130 (N.H. 1991) ("A society which seemingly becomes more complex with each passing day is enlightened when its laws reflect a high purpose to have apparent differences between those who wield the authority of government, and those who do not, resolved in the courts or by some other orderly process, rather than by physical confrontation on the street or in the gutter.").[2]

---

[2] Because of the danger of violence implicated in resisting arrest, "the overall trend in a majority of states has been toward abrogation of the common law right to use reasonable force to resist an unlawful arrest."  Hill, 264 Va. at 548 n.2, 570 S.E.2d at 809 n.2.  See e.g. Conn. Gen. Stat. § 53a-23 (LEXIS through P.L. 16-28 of the 2016 reg. sess.) ("A person is not justified in

Furthermore, to the extent a suspect exercises his right to resist an unlawful arrest, he gambles that the facts and circumstances viewed objectively *from the officer's perspective* will not support a finding of probable cause. "To determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." Maryland v. Pringle, 540 U.S. 366, 371 (2003) (quoting Ornelas v. United States, 517 U.S. 690, 696 (1996)); Whren v. United States, 517 U.S. 806, 813 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."). "A police officer has probable cause to arrest a person if, at the time of the arrest, the facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Michigan v. DeFillippo, 443 U.S. 31, 37 (1979).

---

using physical force to resist an arrest by a reasonably identifiable peace officer . . . whether such arrest is legal or illegal."); 11 Del. C. § 464(d) (LEXIS through 80 Del. Laws, ch. 243) ("The use of force is not justifiable under this section to resist an arrest which the defendant knows or should know is being made by a peace officer, whether or not the arrest is lawful."); N.H. Rev. Stat. Ann. 594:5 (LEXIS through Ch. 71 of the 2016 reg. sess.) ("If a person has reasonable ground to believe that he is being arrested and that the arrest is being made by a peace officer, it is his duty to submit to arrest and refrain from using force or any weapon in resisting it, regardless of whether there is a legal basis for the arrest."); NY CLS Penal § 35.27 (LEXIS through 2016) ("A person may not use physical force to resist an arrest, whether authorized or unauthorized, which is being effected or attempted by a police officer or peace officer when it would reasonably appear that the latter is a police officer or peace officer."); Farrah v. Gondella, 725 F. Supp. 2d 238, 248 (D. Mass. 2010) ("There is no right under [Massachusetts] state or federal law to resist an arrest or search, even one that is illegal from its inception."); King v. State of California, 195 Cal. Rptr. 3d 286, 309 (Cal. Ct. App. 2015) ("A person who is subjected to an unconstitutional detention, arrest, or search does not have a right to use force to resist that constitutional violation."). However, whatever merit there might be to litigating the lawfulness of an arrest in the courtroom rather that engaging in resistance in the street, we recognize that the authority to abrogate the common law rests with the General Assembly and not with this Court. Bruce Farms, Inc. v. Coupe, 219 Va. 287, 293, 247 S.E.2d 400, 404 (1978).

"On many occasions, we have reiterated that the probable-cause standard is a 'practical, nontechnical conception' that deals with 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" Pringle, 540 U.S. at 370 (quoting Illinois v. Gates, 462 U.S. 213, 231 (1983)). It is thus a fluid concept "incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstance." Id. at 370-71. At the heart of all the definitions of probable cause is a reasonable ground for belief of guilt "particularized with respect to the person to be arrested." Id. "Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the [probable-cause] analysis." Id. (quoting Gates, 462 U.S. at 235). After all, "[t]he Constitution does not guarantee that only the guilty will be arrested." Baker v. McCollan, 443 U.S. 137, 145 (1979). Therefore, "[u]nlike a factfinder at trial, 'reasonable law officers need not resolve every doubt about a suspect's guilt before probable cause is established.'" Joyce v. Commonwealth, 56 Va. App. 646, 660, 696 S.E.2d 237, 243 (2010) (quoting Slayton v. Commonwealth, 41 Va. App. 101, 107, 582 S.E.2d 448, 451 (2003)).

Furthermore, when a law enforcement officer has probable cause to arrest a suspect for one crime, it is immaterial if the suspect is later charged with something else. Sullivan v. Commonwealth, 210 Va. 201, 203, 169 S.E.2d 577, 579 (1969) ("And it is immaterial that the officer advised [defendant] he was being arrested for disorderly conduct, instead of for obstructing an officer in the discharge of his duties.").

Doscoli argues that because his profanity did not rise to the level of fighting words, there was no probable cause for his arrest and he was therefore privileged to resist. Doscoli's argument fails because viewed objectively from the officer's point of view there was probable cause for Doscoli's arrest. First, the trial court specifically disregarded the content of Doscoli's

speech when it found him guilty of violating Code § 18.2-463. The court stated, "I don't really care what he said." Rather, the court found Doscoli guilty because the officers "told [Doscoli] specifically to keep it down and calm down and he continued on with . . . the confrontation with [the officers]." Doscoli's conduct, not the content of his speech, was the basis of the court's guilty finding.

Furthermore, the officer was not required to have sufficient evidence to warrant a conviction under Code § 18.2-463, see Joyce, 56 Va. App. at 658, 696 S.E.2d at 243; rather the officer needed only a reasonable ground for belief that Doscoli had "refuse[d] or neglect[ed] to assist him . . . in the preservation of the peace," Code § 18.2-463. And, in deciding whether he has probable cause to arrest a suspect, an officer may rely upon all of the facts and circumstances known to him at the time of the arrest.

Here, the officers were investigating a 911 "hang-up call" that originated from Doscoli's residence. Doscoli exhibited continuous profane and uncooperative behavior from the beginning of the encounter. Doscoli's yelling was loud enough to be heard in the public street when the officers arrived. Doscoli continued the yelling in the common area outside his apartment. When the officers left, they could again hear his yelling from where they were standing in the public street. In the totality of these circumstances, there was probable cause for the officers to believe Doscoli had refused or neglected to obey their order to preserve the peace.

Finally, the "absence of probable cause to believe a suspect committed the *particular crime* for which he was arrested does not necessarily invalidate the arrest if the officer possessed sufficient objective information to support an arrest on a *different charge*." Tizon v. Commonwealth, 60 Va. App. 1, 17, 723 S.E.2d 260, 268 (2012) (quoting Slayton, 41 Va. App. at 109, 582 S.E.2d at 452).

Code § 18.2-416 provides that "[i]f any person shall, in the presence or hearing of another, curse or abuse such other person . . . , under circumstances reasonably calculated to provoke a breach of the peace, he shall be guilty of a Class 3 misdemeanor." In Smith v. Commonwealth, 30 Va. App. 737, 741, 519 S.E.2d 831, 833 (1999) (affirming appellant's conviction for assault and battery of a police officer because probable cause made the arrest lawful), we held that officers had probable cause to arrest appellant for violation of Code § 18.2-416 when she "became belligerent and called [the officer] a 'white mother f____' . . . [and] 'white man's ass-kissing mother f____.'" It is undisputed that Doscoli cursed the officers repeatedly with abusive language. This provided another basis for probable cause upon which Doscoli could be lawfully arrested.[3]

Moreover, in Molinet v. Commonwealth, 65 Va. App. 572, 581, 779 S.E.2d 231, 235 (2015), this Court affirmed a conviction for obstruction of a law enforcement officer, in violation of Code § 18.2-460.[4] In Molinet, the appellant interfered with the officer's questioning of another individual. Id. at 578, 779 S.E.2d at 234. Although Molinet did not touch the officer, we held that evidence of appellant's "stepp[ing] toward [the officer] in an aggressive,

---

[3] In determining whether there was probable cause to arrest Doscoli for violation of this statute, we are not required to address the constitutionality of the statute because an officer is permitted to rely on a validly enacted statute when there is "no controlling precedent that this ordinance was or was not constitutional." Freeman v. Commonwealth, 65 Va. App. 407, 422, 778 S.E.2d 519, 526 (2015). Where an officer arrests a suspect based on a good faith reliance of the validity of a validly enacted statute, the court need not address the constitutionality of the statute because the arrest would have been valid regardless of the ultimate outcome of the appellant's attack on the constitutionality of the statute. Id. at 424, 778 S.E.2d at 527-28.

[4] Code § 18.2-460 states in relevant part,

> If any person without just cause knowingly obstructs . . . any law-enforcement officer . . . in the performance of his duties as such or fails or refuses without just cause to cease such obstruction when requested to do so by such . . . law-enforcement officer . . . , he shall be guilty of a Class 1 misdemeanor.

threatening, and angry manner while shouting and cursing" was sufficient to allow a rational fact finder to conclude the conduct prevented the officer from performing his duties in violation of Code § 18.2-460(A).  Id. at 580, 779 S.E.2d at 235.

Here, Doscoli burst out of his apartment into the common area in an aggressive and angry manner while shouting and cursing.  While the officers tried to talk to Dorn to determine the cause of his arm wound and to determine if he needed assistance, Doscoli remained belligerent, aggressive, and uncooperative.  He actively sought to prevent the officers from conversing with Dorn.  Officer Minix warned Doscoli at that point that he could be arrested for obstruction of an officer in the performance of his duties.  Thus, there was sufficient objective evidence to support probable cause to arrest Doscoli for obstruction even if he was ultimately charged with failure to aid an officer in the preservation of the peace.

In sum, the officers had probable cause to arrest Doscoli.  Consequently, Doscoli had no legal right to resist the lawful arrest.[5]  Doscoli raises no argument regarding the sufficiency of the evidence supporting his conviction of Code § 18.2-463.  We therefore affirm both convictions.

### III.  Conclusion

Because we find that Doscoli's arrest was lawful and was not based on the content of his speech, we affirm his convictions.

Affirmed.

---

[5] Consequently, we are not required to decide whether the resistance used by Doscoli was "reasonable."