COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Chief Judge Decker, Judges Beales and O'Brien
Argued by videoconference


MICHELLE LIGHTFOOT

MEMORANDUM OPINION* BY
v.      Record No. 0313-20-2      JUDGE RANDOLPH A. BEALES
APRIL 6, 2021

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF WESTMORELAND COUNTY
Harold W. Burgess, Jr., Judge Designate

Kevin Purnell (Kevin D. Purnell, PLLC, on brief), for appellant.

Erica L. Sieg, Assistant Attorney General (Mark R. Herring,
Attorney General; Craig W. Stallard, Assistant Attorney General,
on brief), for appellee.


Appellant Michelle Lightfoot was convicted of felony assault on a law enforcement

officer in violation of Code § 18.2-57, misdemeanor intentional destruction of property in

violation of Code § 18.2-137, and misdemeanor obstruction of justice in violation of Code

§ 18.2-460. On appeal, she challenges all of her convictions, arguing that "[t]he trial court erred

in not finding an unlawful arrest of Lightfoot and not recognizing Lightfoot's reasonable use of

force to resist an unlawful arrest."

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I. BACKGROUND[1]

On October 4, 2018, Deputy Will England of the Westmoreland County Sheriff's Office was stopped at a red light in his police vehicle. England was facing westbound at the four-way intersection while Lightfoot was operating a vehicle behind him. When the light turned green, England observed Lightfoot "drive in the left only turn lane through the intersection and pass" him and the vehicle in front of him. England "immediately activated" the lights on his patrol vehicle. Instead of stopping, Lightfoot "proceeded in the left lane, going westbound," made a left turn onto another street, and then made another turn into a gas station where "she came to a complete stop at gas pump number two."

Deputy England pulled his police vehicle in behind Lightfoot's vehicle with his lights still activated. Upon England's arrival, Lightfoot "immediately exited the vehicle." England "advised her to go ahead and get back in the vehicle." Lightfoot did not comply with the request. England identified himself to Lightfoot and informed her "that the reason of the traffic stop was because she passed in the intersection." Lightfoot replied that she had seen England and that "she used her turn signal." England then asked Lightfoot for her driver's license and told her to remain in her vehicle. Lightfoot gave England her license and initially seemed to agree to stay with her vehicle.

England testified that it is "typical to ask the driver to stay with their vehicle" when making traffic stops "for officer's safety and scene control and scene safety." He also testified that during traffic stops, officers "run the driver's license" through certain police databases in

---

[1] As the Supreme Court has stated, "In accordance with established principles of appellate review, we state the facts in the light most favorable to the Commonwealth, the prevailing party in the trial court. We also accord the Commonwealth the benefit of all inferences fairly deducible from the evidence." Riner v. Commonwealth, 268 Va. 296, 303 (2004).

order to "to see if there is any active warrants and license pattern." In order to go about this procedure, England returned to his vehicle with Lightfoot's license to run Lightfoot's information through VCIN.[2] Before he could do so, however, he observed Lightfoot leave her vehicle and "start walking towards the store." England instructed her "multiple times" to return to her vehicle, but Lightfoot refused, stating, "You can call whoever you want to call. I'm getting gas." She also remarked, "I do not have to get back in my car." When she continued to argue, England told Lightfoot that she was obstructing justice. England testified that Lightfoot responded, "I guess I'm obstructing then" and that she continued walking toward the store. Lightfoot also told England, "Call who you want."

England did not tell Lightfoot that she was under arrest, but he removed his handcuffs and advised Lightfoot to put her hands behind her back. England reached for her arm, and Lightfoot "turned around and her fists were balled up, and stated, 'I will fuck you up.'" When England again instructed her to put her hands behind her back, Lightfoot punched England in the face with a closed fist. England then tried to apply "a controlled technique, with an arm bar take down, which was unsuccessful." At that point, Lightfoot hit England in the face approximately six times, once with her purse. She slapped him twice with an open hand and kicked him in the leg. England was eventually able to get Lightfoot onto the ground while he waited for backup. Two additional officers arrived on the scene and took Lightfoot into custody. Footage from England's body camera, which captured the encounter while it was attached to England's person and after it was knocked to the ground during the altercation, was introduced into evidence. At Lightfoot's trial, England testified that he was not able to run Lightfoot's information through VCIN during the stop.

---

[2] VCIN refers to the Virginia Criminal Information Network. See Neal v. Fairfax Cnty. Police Dep't, 299 Va. 253, ___ (2020).

As a result of the encounter, England suffered scratches on his neck and cuts on his knees and hands. In addition, his "body cam bracket" was damaged when his "body cam was knocked off during the tussle," and the "ribbons pin that goes above the name plate" on his uniform was ripped off.

Lightfoot was tried for felony assault on a law enforcement officer in violation of Code § 18.2-57, misdemeanor intentional destruction of property in violation of Code § 18.2-137, and misdemeanor obstruction of justice in violation of Code § 18.2-460. After the Commonwealth presented its case-in-chief, Lightfoot's counsel moved to strike, arguing that Lightfoot had been exercising her right to use reasonable force to resist an unlawful arrest. Her counsel contended that the arrest was unlawful because Deputy England lacked probable cause to arrest Lightfoot. In response, the Commonwealth argued that there was probable cause to arrest Lightfoot for obstruction of justice because England was unable to complete the traffic stop and run Lightfoot's information through VCIN due to Lightfoot's repeated attempts to leave the scene and her refusal to obey his commands during the traffic stop, which interfered with his investigation.

After hearing argument on the motion to strike, the trial court stated, "There is no question but that if I believe the arrest was unlawful, that the lady had a right to maintain force to resist arrest. So the issue for me is whether or not I think there is probable cause to arrest her." The trial court denied the motion to strike, finding as follows:

> The evidence I have is that he told her, or asked her to stay in the car so, for police officer's safety, so that he could run her driver's license in his computer to see if there were warrants and such outstanding. And despite having been asked repeatedly to get back in the car, she refused to do it, said she was going to the store. So. I think your argument invites me to assume that she was going to go in the store and pay for her gas, as she said.
> But the other side of that coin is, she may not. She may have taken off. So, I think the police officer's commands to her

were lawful commands, which she refused to do, which hindered her, his ability to complete his traffic stop. So, your motion to strike is overruled.

Lightfoot's counsel declined to put on evidence and renewed the motion to strike, adopting the earlier argument. The trial court again denied the motion, stating:

> Well, again, I think the police officer had a basis for directing her to stay in her car so that he could run her record, run her license check, make sure that she wasn't going to present any danger to him or to other people. He repeatedly asked her to do it. She refused to do it. His own testimony was, yeah, she did say she was going to go in the store and pay for the gas, but he didn't know what she was going to do.
> His testimony was, "I did not know what she planned to do." So, based on that, Ms. Lightfoot, would you stand, ma'am.
> I find beyond a reasonable doubt that you are guilty of assaulting a police officer, and I also find beyond a reasonable doubt that you obstructed, hindered his duties as an officer, and that you did, in fact destroy, vandalize property belonging to the county. You may have a seat again, please.

The trial court sentenced Lightfoot to two years of incarceration for the assault on a law enforcement officer, with one year and six months suspended, and ninety days, all suspended, on each of the two misdemeanor convictions.

## II. ANALYSIS

On appeal to this Court, Lightfoot argues that the "trial court erred in not finding an unlawful arrest of Lightfoot and not recognizing Lightfoot's reasonable use of force to resist an unlawful arrest."[3] Lightfoot contends that Deputy England lacked probable cause to make a lawful arrest because "[e]ven with Lightfoot going in the store, the deputy remained capable to verify her information, learn of any issues with her driver's license and/or discover any

---

[3] On appeal, Lightfoot challenges all of her convictions because she argues that they all arose from the actions she took while she resisted what she claimed was an unlawful arrest.

outstanding warrant."[4]  Lightfoot's counsel emphasizes that "the deputy was fully capable of performing his duties while Lightfoot walked into the store."[5]

"We review *de novo* whether a police officer had probable cause to make an arrest." Doscoli v. Commonwealth, 66 Va. App. 419, 424 (2016) (citing McCain v. Commonwealth, 261 Va. 483, 489 (2001)).  "In performing such analysis, we are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers."  McGee v. Commonwealth, 25 Va. App. 193, 198 (1997) (*en banc*) (citing Ornelas v. United States, 517 U.S. 690, 699 (1996)).  Furthermore, "when the issues are the lawfulness of an arrest and the reasonableness of force used to resist an unlawful arrest, the ultimate questions involve law and fact and are reviewed *de novo* on appeal."  Brown v. City of Danville, 44 Va. App. 586, 603 (2004) (quoting Brown v. Commonwealth, 27 Va. App. 111, 117 (1998)).

"Under the common law, a citizen generally is permitted to use reasonable force to resist an illegal arrest."  Commonwealth v. Hill, 264 Va. 541, 546 (2002).  "The underlying rationale supporting this common law right is the 'provocation' of an illegal arrest, which operates to excuse an assault directed at thwarting the unlawful arrest."  Id. at 547.  "An unlawful arrest was

---

[4] At oral argument before this Court, counsel for Lightfoot confirmed that Lightfoot was not challenging the lawfulness of the traffic stop.

[5] On appeal, the Commonwealth argues that, by using the handcuffs, "[t]he deputy was simply attempting to maintain the 'status quo' for the *Terry* stop that he was conducting."  The Commonwealth further argues that, because this was a mere detention rather than an arrest, Lightfoot had no right to use force to resist even if the stop had been unlawful.  See Commonwealth v. Hill, 264 Va. 541, 546 (2002) ("We conclude that the law of this Commonwealth, including the common law of England incorporated into our Code by § 1-10, does not provide a basis for recognizing a common law right to use force to resist an illegal *detention*." (emphasis added)).  However, the trial court's decision in this case rested on its assumption that England was making an arrest and that the question before it was, as the trial judge put it, "whether or not I think there is probable cause to arrest her."  Consequently, we review whether there was probable cause for an arrest.

considered a great provocation at common law because of the dire consequences, including incarceration of extreme duration, which often resulted before an accused was permitted a trial for the charged offense." Id. However, "to the extent a suspect exercises his right to resist an unlawful arrest, he gambles that the facts and circumstances viewed objectively *from the officer's perspective* will not support a finding of probable cause." Doscoli, 66 Va. App. at 426 (emphasis in original).

"To determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." Id. (quoting Maryland v. Pringle, 540 U.S. 366, 371 (2003)); see also Jones v. Commonwealth, 279 Va. 52, 59 (2010) (noting that the Virginia Supreme Court has "stated that probable cause exists '"when the facts and circumstances within the officer's knowledge, and of which he has reasonably trustworthy information, alone are sufficient to warrant a person of reasonable caution to believe that an offense has been or is being committed"'" (quoting Buhrman v. Commonwealth, 275 Va. 501, 505 (2008))). Probable cause is "a fluid concept 'incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstance.'" Doscoli, 66 Va. App. at 425 (quoting Pringle, 540 U.S. at 370-71). Accordingly, "[f]inely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the probable-cause decision." Joyce v. Commonwealth, 56 Va. App. 646, 659 (2010) (quoting Pringle, 540 U.S. at 371). "Not even a 'prima facie showing' of criminality is required." Id. (quoting Illinois v. Gates, 462 U.S. 213, 235 (1983)). Instead, "[p]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." Boyd v. Commonwealth, 12 Va. App. 179, 188-89 (1991) (quoting Gates, 462 U.S. at 243 n.13).

Code § 18.2-460(A) states, in relevant part, "If any person without just cause knowingly obstructs . . . any law-enforcement officer . . . in the performance of his duties as such or fails or refuses without just cause to cease such obstruction when requested to do so by such . . . law-enforcement officer . . . he is guilty of a Class 1 misdemeanor."[6]

"To constitute obstruction of an officer in the performance of his duty, it is not necessary that there be an actual or technical assault upon the officer . . . ." Jordan v. Commonwealth, 273 Va. 639, 648 (2007). However, "there must be acts clearly indicating an intention on the part of the accused to prevent the officer from performing his duty, as to 'obstruct' ordinarily implies opposition or resistance by direct action and forcible or threatened means." Id. (quoting Jones v. Commonwealth, 141 Va. 471, 478-79 (1925)). Where the "obstructive behavior 'clearly indicat[es] an intention on the part of the accused to prevent the officer from performing his duty,' the evidence proves the offense." Thorne v. Commonwealth, 66 Va. App. 248, 256 (2016) (alteration in original) (quoting Jordan, 273 Va. at 648).

In Thorne, 66 Va. App. at 250, this Court held that the evidence was sufficient to convict Thorne of obstruction of justice under Code § 18.2-460(A) where she repeatedly refused to comply with an officer's commands during a traffic stop. The officer explained to Thorne that he needed her to roll down her window four to six inches so that he could determine if the tint was "within legal standards" and so that "he could see who was in the back seat to ensure officer

---

[6] The sentencing order in this case does not specify the subsection under which Lightfoot was convicted. However, that information is not necessary to the question of whether probable cause existed for an arrest. As long as Deputy England had probable cause to arrest Lightfoot for a crime – even if that crime was not the one for which she was ultimately charged or convicted – then the arrest was lawful. Doscoli, 66 Va. App. at 428 ("[W]hen a law enforcement officer has probable cause to arrest a suspect for one crime, it is immaterial if the suspect is later charged with something else."); see also Sullivan v. Commonwealth, 210 Va. 201, 203 (1969) (stating that it was "immaterial that the officer advised [the defendant] he was being arrested for disorderly conduct" when the officer actually had the right to arrest the defendant for obstructing an officer in the discharge of his duties).

safety." Id. at 257. Thorne repeatedly refused to roll her window down, and she shouted at the officer. Id. When the officer told her that he would charge her with obstruction, Thorne stated, "I know my rights! Do what you gotta do!" Id. Thorne did not comply until backup arrived for the officer – approximately nine minutes after the officer had made his first request for her to roll down her window. Id. On appeal, this Court held that "these facts demonstrate behavior on the part of the appellant that completely prevented the officer from performing his duty." Id. at 258. The Court reasoned that Thorne's "verbal responses to the officer not only constituted repeated refusals to roll down a window but also reflected her clear understanding that she was keeping him from performing his duty." Id.

In Molinet v. Commonwealth, 65 Va. App. 572, 581 (2015), this Court affirmed Molinet's conviction for obstruction of justice under Code § 18.2-460(A) where Molinet interfered with officers' attempts to question three women. Molinet "failed to comply with numerous requests for [him] to back away to the curb" so that one of the officers "could maintain a secure perimeter" while another officer continued the investigation and the questioning of the women. Id. at 578. Molinet also stepped toward one of the officers "in an aggressive, threatening, and angry manner while shouting and cursing." Id. at 580. Molinet also further evinced his intent to commit obstruction when he testified at his trial that his "main goal [was] to make sure that [those women were] not going to jail or getting arrested." Id. at 581 (alterations in original).

Given that the actions of Thorne and Molinet were sufficient for this Court to conclude that a rational factfinder could have found them guilty of obstruction *beyond a reasonable doubt*, then Lightfoot's actions certainly at least amounted to *probable cause* for obstruction. As the trial court found, Lightfoot "hindered . . . his [Deputy England's] ability to complete his traffic stop." In order to run Lightfoot's information and comply with his duties during the traffic stop,

Officer England testified that he needed Lightfoot to stay with her vehicle "for officer's safety and scene control and scene safety." Because Lightfoot refused his commands to stay with her vehicle, England was not able to maintain order and safety at the scene of the stop and also, at the same time, run her information through VCIN. In addition, when Lightfoot started walking away from her vehicle, England commanded her "multiple times" to return to her vehicle, but she refused to obey his commands and instead continued walking toward the store. The trial court accepted England's testimony, finding that "despite having been asked repeatedly to get back in the car, she refused to do it, said she was going to the store." Furthermore, when Lightfoot stated, "I guess I'm obstructing then[,]" in response to England's accusation that she was obstructing justice, she demonstrated her intent to commit obstruction and thereby prevent England from completing his duties at the traffic stop. Viewed from the perspective of an objectively reasonable police officer, the totality of the circumstances clearly establish "a probability or substantial chance," see Boyd, 12 Va. App. at 188-89, that Lightfoot "without just cause" was "knowingly obstruct[ing]" England "in the performance of his duties." See Code § 18.2-460(A). Therefore, assuming without deciding that England's actions did equate to an arrest of Lightfoot, there was probable cause to arrest her, and, consequently, her argument that she was simply resisting an unlawful arrest has no merit.

### III. CONCLUSION

In short, Lightfoot is wrong when she claims she was resisting an *unlawful* arrest when she punched, kicked, slapped, and threatened Deputy England, in response to his attempts to restrain her, because there was already probable cause to arrest her for obstruction of justice when the officer first attempted to handcuff her. As England testified, during traffic stops, he asks drivers to stay with their vehicle "for officer's safety and scene control and scene safety." After England stopped Lightfoot – a traffic stop that Lightfoot's counsel does not contest on

- 10 -

appeal – the officer told her to stay with her vehicle. When England returned to his patrol vehicle to run her information and complete the traffic stop, he saw her leaving her vehicle and walking toward the convenience store. The trial judge made a finding of fact that Deputy England commanded Lightfoot multiple times to stay with her vehicle but that she refused to obey his commands and continued walking toward the store – preventing the officer from completing his investigation and duties during the traffic stop. Furthermore, when England told Lightfoot that she was obstructing, Lightfoot clearly demonstrated her understanding that she was actually obstructing England in his duties when she stated, "I guess I'm obstructing then." Considering the totality of the circumstances, an objectively reasonable police officer could conclude that there was probable cause to arrest Lightfoot for obstruction of justice. Therefore, assuming England did actually arrest her, it was a lawful arrest. Consequently, when Lightfoot then punched, kicked, hit, and slapped Deputy England, she was *not* resisting an *unlawful* arrest – and was instead committing an assault on a law enforcement officer.

For all of these reasons, we affirm Lightfoot's conviction for felony assault on a law enforcement officer – as well as her convictions for misdemeanor intentional destruction of property and misdemeanor obstruction of justice.

<u>Affirmed.</u>