COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Ortiz and Senior Judge Annunziata
Argued at Fairfax, Virginia

UNPUBLISHED

KENNEDY LYN JENKINS

MEMORANDUM OPINION[*] BY
v.      Record No. 1110-22-4      JUDGE ROBERT J. HUMPHREYS
OCTOBER 10, 2023

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Louise M. DiMatteo, Judge

Rachel C. Collins, Senior Trial Attorney (Office of the Public
Defender, on brief), for appellant.

Ken J. Baldassari, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


A jury found evidence sufficient to convict Kennedy Lyn Jenkins, then a juvenile, of assault

and battery of a law enforcement officer. The circuit court deferred the disposition, placed Jenkins

on probation, and ultimately entered the felony adjudication.[1] On appeal, Jenkins argues that the

circuit court erred in excluding certain video evidence, rejecting two jury instructions, finding the

evidence sufficient to sustain her adjudication, and entering a felony delinquency adjudication.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] The record in this case is sealed. "To the extent that this opinion mentions facts found
in the sealed record, we unseal only those specific facts, finding them relevant to the decision in
this case. The remainder of the previously sealed record remains sealed." *Levick v.
MacDougall*, 294 Va. 283, 288 n.1 (2017).

BACKGROUND[2]

On July 31, 2018, Jenkins and two other juveniles entered the Pentagon City Metro Station in Arlington County and collectively passed through a fare gate after scanning only a single fare card. Surveillance footage captured the events. The station manager called the girls back and waved down uniformed Metro Transit Officer Tarique Roberts, who quickly responded and began speaking with the girls. Officer Roberts escorted them back to the gate to investigate the fare evasion. Considering that the girls were juveniles, Roberts planned to advise them of the offense, identify them and their parents, and release them. Metro Transit Officers Chaisone and Cancredi arrived to assist Roberts.

While trying to determine which fare card had been used to open the gate, Roberts instructed each of the girls to provide their Metro cards. After confirming that the first girl had a card, Roberts let her through the gate. Jenkins quickly pulled something from her back pocket and ran it over the scanner, causing the gate to open, but Roberts refused to let her pass because he wanted to see her fare card. Jenkins refused to show Roberts her fare card. At trial, Roberts testified that he was not satisfied with Jenkins scanning her card. He explained that the gate for which Jenkins scanned was a handicap accessible gate, which stayed open longer than other gates and sometimes re-opened after a person exited in order to permit a wheelchair through.

After Jenkins continued to withhold her Metro fare card, Roberts instructed her to step to the side and speak with him privately. Jenkins did not follow him, and instead walked in the opposite direction, towards the escalator leading down to the train platform. Roberts followed, all the time

---

[2] On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

issuing verbal commands to Jenkins which she continued to ignore. Roberts explained that he had not completed his investigation because he was still attempting to identify Jenkins, who was shouting profanities and screaming at him to "get out of [her] face." Eventually, Roberts stood in front of Jenkins as she stood backed against the wall of the station and explained that the issue was minor and that he was simply trying to identify her and call her parents. After roughly a minute of conversation, Jenkins took an "aggressive stance." Roberts decided to get his handcuffs out "just to detain her," but then Jenkins stepped back and pushed Roberts away. Roberts did not arrest her at that time, hoping to deescalate the situation and avoid a "bigger scene." Instead, Roberts continued speaking with Jenkins.

After another two minutes, Jenkins abruptly stepped away from Roberts onto the escalator and descended to the train platform.[3] Roberts followed. Officer Cancredi soon noticed Roberts was missing and stepped onto the escalator and away from Jenkins' companions. As he descended, he saw Jenkins "ball up her fist and lunge" at Roberts. A struggle ensued, and Officers Roberts, Cancredi, and Chaisone took Jenkins to the ground. During the struggle, Cancredi saw Jenkins bite Roberts on the arm and spit on his uniform. He also heard Roberts call out that he had been bitten. The Commonwealth introduced images of Roberts' injuries and the stain on his uniform.

At trial, Jenkins moved to strike the evidence, challenging the lawfulness of her arrest and arguing that she bit and spat on Officer Roberts in self-defense. The circuit court denied the motion, finding that Jenkins was lawfully arrested because Officer Roberts had probable cause to arrest her after she pushed him on the upper level of the platform. Jenkins then offered a video her friend recorded showing a portion of the physical struggle with the three officers on the train platform while handcuffing Jenkins. In response to the Commonwealth's relevance objection, Jenkins argued that the video contradicted the officers' testimony regarding the number of bites and when

---

[3] No surveillance footage exists after Jenkins and Roberts descended to the train platform.

exactly they occurred. The circuit court excluded the video, holding that it was not relevant as impeachment of the officers' testimony because the record was ambiguous on the purported point of impeachment—whether Officer Roberts stated that Jenkins had bit him, and if so, how many times. The circuit court found that any "possible" impeachment value was "speculative" and that the narrated video contained inadmissible hearsay.

Before submitting the case to the jury, the circuit court rejected two jury instructions Jenkins offered to explain her defense of justification. Proposed Instruction L read:

> A person has a common law right to use reasonable force to resist arrest, if the arresting officer does not have probable cause for the arrest.

Proposed Instruction M read:

> Where an officer attempts an unlawful arrest, the officer is the aggressor which gives the arrestee the right to use self-defense to resist so long as the force used is reasonable. The amount of force used must be reasonable in relation to the harm threatened.

The circuit court refused both instructions, finding that its earlier ruling that the arrest was lawful rendered the instructions irrelevant.

The jury found Jenkins guilty of assault and battery of a law enforcement officer, but the circuit court deferred the finding and ordered Jenkins to comply with probation until her eighteenth birthday. Over the next three years, the circuit court held numerous review hearings to follow Jenkins' progress pursuant to her deferred disposition.[4] On May 27, 2022, the circuit court found that Jenkins had been noncompliant with the terms of her deferred disposition and formally entered the felony adjudication. The circuit court sentenced her to "time served." Jenkins appeals.

---

[4] The circuit court received numerous updates indicating that Jenkins had violated her medication regimen and curfew, got into altercations at school, and had new law enforcement contact. Nevertheless, a May 26, 2022 update reported that Jenkins, then 18, had completed her 3-year term of probation and recommended a charge reduction, indicating that she had made progress.

ANALYSIS

I. Admissibility of Jenkins' video evidence

Jenkins' first assignment of error challenges the circuit court's exclusion of a video recorded by her friend, showing a portion of her arrest. She argues that the circuit court improperly excluded the video on relevance and hearsay grounds.[5]

"It is well-settled that '[d]ecisions regarding the admissibility of evidence "lie within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of discretion."'" *Nottingham v. Commonwealth*, 73 Va. App. 221, 231 (2021) (alteration in original) (quoting *Blankenship v. Commonwealth*, 69 Va. App. 692, 697 (2019)). When we recognize that a matter is one within the circuit court's discretion, we mean the court "has a range of choice, and that its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law." *Lucas v. Riverhill Poultry, Inc.*, 300 Va. 78, 93 (2021) (quoting *Landrum v. Chippenham and Johnston-Willis Hosps., Inc.*, 282 Va. 346, 352 (2011)). "In evaluating whether a trial court abused its discretion, . . . we do not substitute our judgment for that of the trial court. Rather, we consider only whether the record fairly supports the trial court's action." *Kenner v. Commonwealth*, 299 Va. 414, 423 (2021) (quoting *Carter v. Commonwealth*, 293 Va. 537, 543 (2017)).

Jenkins' primary contention is that she was justified in resisting what she believed was an unlawful arrest. She argues the video was relevant because it would have corroborated her claim that the arrest was unlawful, and because it impeached the officer's testimony. We begin our analysis by noting that when Jenkins proffered the video, the circuit court had already ruled that

---

[5] Because the circuit court did not rule on authentication or balance the probative value against the prejudicial nature of the video, we do not address Jenkins' arguments on these issues. Although the circuit court used the term "inflammatory" when discussing the footage, it did not exclude the video due to the danger of unfair prejudice under Virginia Rule of Evidence 2:403(a).

Roberts had probable cause to arrest her before the events recorded on the video transpired. Jenkins has not challenged the probable cause ruling. If an officer has probable cause to arrest a suspect, that person has no legal right to resist the arrest. *Doscoli v. Commonwealth*, 66 Va. App. 419, 430 (2016).[6] Viewed in the context of the circuit court's unchallenged probable cause ruling settling that Jenkins' arrest was lawful, her claim of unlawful arrest was no longer properly at issue in the case; therefore, the circuit court properly excluded the video so far as it was offered to prove the claim of unlawful arrest. Va. R. Evid. 2:401; *Commonwealth v. Proffitt*, 292 Va. 626, 634-35 (2016) ("relevant" evidence must be material, meaning that it "[must] tend[ ] to prove a matter that is properly at issue in the case" (alterations in original) (quotations and citation omitted)).

Turning to the question of the video's admissibility to impeach the testimony of Officer Roberts,[7] we find that the record fairly supports the circuit court's decision. Jenkins argues that the video contradicted Roberts' testimony concerning whether she bit him and therefore was admissible to generally question his credibility.

Generally, "[a]ll relevant evidence is admissible." Va. R. Evid. 2:402(a). "The proponent of the evidence bears the burden of establishing[,] by a preponderance of the evidence, the facts necessary to support its admissibility." *Perry v. Commonwealth*, 61 Va. App. 502, 509 (2013) (alteration in original) (quoting *Thomas v. Commonwealth*, 44 Va. App. 741, 753, *adopted upon reh'g en banc*, 45 Va. App. 811 (2005)). In general, the credibility of an opposing party's "witness may be impeached . . . with any proof that is relevant to the witness's credibility." Va. R. Evid.

---

[6] To the extent Officer Roberts was detaining Jenkins to investigate a Metro fare evasion at the time she pushed him, Jenkins had no common law right to resist the investigative detention pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968). *Commonwealth v. Hill*, 264 Va. 541, 548 (2002) ("[W]e hold that a person in this Commonwealth does not have the right to use force to resist an unlawful detention or 'pat down' search.").

[7] At trial, Jenkins made clear that the video was "not offered as an impeachment for [Officer] Cancredi," and "tends to show it goes [sic] directly against Officer Roberts' credibility."

2:607(a). The rule provides that a witness may be impeached by evidence that contradicts his testimony and "any other evidence which is probative on the issue of credibility because of a logical tendency to convince the trier of fact that the witness's perception, memory, or narration is defective or impaired, or that the sincerity or veracity of the witness is questionable." Va. R. Evid. 2:607(a)(vii)-(viii).

Here, the circuit court held that the video was not relevant because it was not proper impeachment evidence. The circuit court found Jenkins' argument that the video contradicted Roberts' testimony unavailing because no evidence established the precise context of Roberts' statement that Jenkins had bitten him or whether Roberts stated more than once that Jenkins had bitten him. The circuit court found the impeachment value was only speculative.

Because the video did not capture the beginning of the physical struggle between the officers and Jenkins, it does not reveal what was said or done prior to the start of the recording. Also, from the vantage point of the recording it does not show Jenkins' face or Roberts' hands leading up to the point when he stated, "she bit me." Therefore, it is not clarifying on the points of alleged inconsistency and there is nothing in the video that appears to impeach Officer Roberts' testimony. Under the circumstances, we cannot say that the circuit court's exclusion of the video was an abuse of discretion. Because we find no error in the circuit court's ruling that the video was not relevant, we need not analyze Jenkins' claim that the video was admissible under proper hearsay exceptions.

## II. Jury Instructions

Jenkins argues that the circuit court erred by refusing the two jury instructions she proffered concerning the common law right to resist an unlawful arrest.

This Court reviews a circuit court's decisions in giving and denying requested jury instructions for abuse of discretion. *Barney v. Commonwealth*, 69 Va. App. 604, 609 (2019). Our

sole "responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" *Conley v. Commonwealth*, 74 Va. App. 658, 674-75 (2022) (quoting *Fahringer v. Commonwealth*, 70 Va. App. 208, 211 (2019)). When reviewing a circuit court's refusal to grant the defendant's proffered instruction, this Court "view[s] the facts in the light most favorable to the defendant." *Jones v. Commonwealth*, 71 Va. App. 70, 93 (2019) (alteration in original) (quoting *Avent v. Commonwealth*, 279 Va. 175, 202 (2010)). "We recognize, however, that there are certain issues for which a jury instruction can never be appropriate because they represent questions of law that the trial court, and not the jury, must resolve." *Vay v. Commonwealth*, 67 Va. App. 236, 255 (2017) (upholding trial court's denial of an "incidental detention" jury instruction in an abduction case because the question of "incidental detention" is a legal one).

Jenkins' two proposed instructions invited the jury to determine whether Officer Roberts had probable cause to arrest Jenkins on the station's lower platform and whether Jenkins was permitted to use reasonable force to resist the arrest. She contends that her proffered instructions were appropriate because the record included more than a scintilla of evidence to support her claim that her arrest was unlawful.[8] The circuit court refused the proffered instructions because it had already determined as a matter of law that Officer Roberts had probable cause to arrest Jenkins, rendering the instructions inapplicable.

Although Jenkins disputes the officers' testimony regarding the circumstances of her arrest, as noted above she did not assign error to the circuit court's probable cause ruling. Accordingly, we

---

[8] Jenkins also argues that the instructions also addressed whether the officer acted within his public duties—an element of the charged offense. This argument is offered for the first time on appeal so we will not address it. *See* Rule 5A:18. "[N]either an appellant nor an appellate court should 'put a different twist on a question that is at odds with the question presented to the trial court.'" *Bethea v. Commonwealth*, 297 Va. 730, 744 (2019) (quoting *Commonwealth v. Shifflett*, 257 Va. 34, 44 (1999)); *see also West Alexandria Prop., Inc. v. First Virginia Mortgage and Real Estate Inv. Trust*, 221 Va. 134, 138 (1980) (same).

do not review the circuit court's probable cause ruling on appeal. *Commonwealth v. Hill*, 264 Va. 541, 546 (2002) (refusing to consider an unchallenged ruling). The circuit court's uncontested probable cause ruling rendered Jenkins' proffered instructions inapplicable as a matter of law: it was the court's prerogative to rule on the legal question of probable cause, and if probable cause existed, Jenkins had no legal right to resist the lawful arrest. *Doscoli*, 66 Va. App. at 430. Accepting the proposed instructions would have wrongly invited the jury to address questions of law disposed of by the court and not challenged. Accordingly, the circuit court did not err in refusing Jenkins' proffered instructions.

### III. Sufficiency of the evidence

Jenkins argues that the circuit court erred in "deeming the evidence sufficient" to find her guilty of assault and battery on a law enforcement officer. Her entire argument supporting this assignment of error states:

> The Commonwealth was required to prove that Ms. Jenkins knowingly committed assault or battery against a police officer while the officer was performing his public duties in the Commonwealth. Officer Roberts had no basis to effectuate an arrest when he had no information related to who, if anyone, didn't pay a Metro fare, an offense the officer said would generally not result in an arrest. The officer testified that he was arresting Ms. Jenkins for assault on law enforcement but also stated that the assault occurred while trying to put his handcuffs on her. Because the arrest was unlawful, Ms. Jenkins had the right to resist the arrest and therefore acted in self defense.

"Rule 5A:20(e) requires that an appellant's opening brief contain '[t]he principles of law, the argument, and the authorities relating to each question presented.' Unsupported assertions of error 'do not merit appellate consideration.'" *Bartley v. Commonwealth*, 67 Va. App. 740, 744 (2017) (alteration in original) (quoting *Jones v. Commonwealth*, 51 Va. App. 730, 734 (2008)). "We require adherence to this rule because '[a] court of review is entitled to have the issues clearly defined and to be cited pertinent authority.'" *Id.* (alteration in original) (quoting *Jones*, 51 Va. App.

- 9 -

at 734). "The appellate court is not a depository in which the appellant may dump the burden of argument and research." *Id.* (quoting *Jones*, 51 Va. App. at 734). "To ignore such a rule by addressing the case on the merits would require this court to be an advocate for, as well as the judge of the correctness of, [appellant's] position on the issues [s]he raises." *Id.* (first alteration in original) (quoting *Jones*, 51 Va. App. at 735). "On the other hand, strict compliance with the rules permits a reviewing court to ascertain the integrity of the parties' assertions which is essential to an accurate determination of the issues raised on appeal." *Id.* (quoting *Jones*, 51 Va. App. at 735). Our cases clearly establish that when we find significant a party's "failure to strictly adhere to the requirements of Rule 5A:20(e)" the Court can, and does, treat the issue as waived. *Conley*, 74 Va. App. at 681 (quoting *Bartley*, 67 Va. App. at 744).

Here Jenkins' argument that the evidence was not sufficient consists solely of conclusory statements unsupported by any legal analysis or authority. Apart from citations to the appropriate standard of review, Jenkins provides no legal guidance for this Court to evaluate the merits of her claim. If Jenkins believed the circuit court erred, Rule 5A:20(e) required her "to present that error to us with legal authority to support [her] contention." *Id.* (quoting *Sfreddo v. Sfreddo*, 59 Va. App. 471, 494 (2012)). Having failed to do so, this issue is waived. *Bartley*, 67 Va. App. at 745.

IV. Felony adjudication

A circuit court has authority to dispose of cases involving delinquent juveniles in numerous ways, including deferring disposition of the delinquency charge "[w]ithout entering a judgment of guilty" for a "specific period of time . . . with due regard for the gravity of the offense and the juvenile's history, and place the juvenile on probation." Code § 16.1-278.8(A)(5). "Upon fulfillment of the terms and conditions, the court shall discharge the juvenile and dismiss the proceedings against him." *Id.* If the circuit court finds that a juvenile "violated" the "terms of

- 10 -

probation," however, the court "may . . . modify or extend the terms of the order of probation or parole, including termination of probation." Code § 16.1-291(B).

We review a circuit court's determination of whether a juvenile satisfied the conditions of a deferred disposition for abuse of discretion. *Cf. Suhay v. Commonwealth*, 75 Va. App. 143, 156 (2022) (holding that the use of the word "may" in Code § 19.2-303.6(A) indicated that whether to grant a defendant a deferred disposition based on his mental health disorder or disability was "left to the sound discretion of the trial court"); *Russnak v. Commonwealth*, 10 Va. App. 317, 321 (1990) ("It is beyond question that '[a] court which has ordered a suspension of sentence undoubtedly has the power to revoke it when the defendant has failed to comply with the conditions of the suspension.'" (alteration in original) (quoting *Griffin v. Cunningham*, 205 Va. 349, 354 (1964))).

An abuse of discretion can occur in three principal ways: "when a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; and when all proper factors, and no improper ones, are considered, but the court, in weighing those factors, commits a clear error of judgment." *Lawlor v. Commonwealth*, 285 Va. 187, 213 (2013) (quoting *Landrum*, 282 Va. at 352).

Jenkins argues that the circuit court improperly weighed statements she made during the dispositional hearing on May 27, 2022. During the hearing, Jenkins stated that although she was "willing to say she was in the wrong" and could have "handled the situation way different," she did not "feel as though [she] was in the wrong." She blamed the escalation of the events on Officer Roberts and sought to revisit the events surrounding her arrest. On appeal she contends that her rehabilitative efforts during her probation outweighed these statements and the circuit court improperly weighed them against her. The record does not support this contention.[9]

_____

[9] Additionally, Jenkins provides no authority for the proposition that heavily weighing her statements at the disposition hearing would amount to an abuse of discretion. *See* Rule 5A:20(e).

- 11 -

The record reflects that Jenkins had a long history of noncompliance with the terms of her supervision. At the numerous review hearings, the circuit court heard several reports of Jenkins' noncompliance, including her failure to abide by her curfew restrictions, her medication regimen, and misbehavior at school. Although the circuit court admonished Jenkins along the way for her noncompliance, it nevertheless permitted Jenkins to remain under supervision to continue rehabilitative efforts. In the end, Jenkins' defiant statements at the dispositional hearing were consistent with the well-documented history of her noncompliance with supervision and support the circuit court's finding that she had violated the conditions of the deferred disposition order. We find no abuse of the circuit court's discretion in adjudicating Jenkins as delinquent.

## CONCLUSION

For the above reasons, we hold that the circuit court did not err in excluding Jenkins' proposed video evidence or jury instructions, nor in entering a felony adjudication. Further, we find that by providing no legal argument or authority, Jenkins waived her sufficiency of the evidence claim. Accordingly, we affirm her felony adjudication.

*Affirmed*.